DONALD ANDERSON *v.* STATE OF INDIANA.

[No. 372A125. Filed August 30, 1973. Rehearing denied October 5, 1973.]

*Harriette Bailey Conn* [*Mrs.*], Public Defender of Indiana, *David P. Freund,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Lynda F. Huppert,* Deputy Attorney General, for appellee.

WHITE, J.—Appellant, Donald E. Anderson, was denied post-conviction relief and appeals.

His *pro se* petition filed June 11, 1971, on the form prescribed by Rule PC 1 (with a twenty-one page "Memorandum in Support" attached thereto) discloses that he was then serving concurrently a one-to-five-years sentence imposed by the trial court (i.e., Division Two of the Criminal Court of Marion County) on June 12, 1969, and a 360-days sentence imposed February 25, 1970, by Division One of the Criminal Court of Marion County. Although he had been in custody continuously since his latest arrest, on or about January 4, 1969, he did not begin the service of these sentences until March 9, 1971. All time served prior thereto was treated by

the Parole Board as "back-up time" from a much earlier two-to-fourteen-years sentence under which he was still on parole at the time of his latest arrest.[1]

After an evidentiary hearing on July 22, 1971, and on September 9, 1971, petitioner-appellant was denied relief. He then filed a motion to correct errors which the trial court overruled. That motion is his assignment of errors for this appeal.[2] The essence of that motion is that the trial court erred in holding that it had no jurisdiction to review the action of the Parole Board in determining how much back-up time petitioner-appellant should serve before beginning to serve the sentences imposed for the offenses he committed while on parole. The prayer of the motion is

> "that the petitioner be afforded a full evidentiary hearing in order to establish these allegations of a deprivation of due process of law by the preponderance of the evidence and thereby be entitled to post-conviction relief."

The trial court's findings and conclusions to the effect that it had no jurisdiction to review the determination made by the Parole Board are clearly erroneous. *Alcorn* v. *State* (1972), 258 Ind. 185, 279 N.E.2d 800, 29 Ind. Dec. 587. In that case the trial court's judgment denying post-conviction relief was reversed because "appellant did not have a hearing before the Indiana Parole Board before the determination was made that his commitment on the last conviction would not commence until December 14, 1969."

In reaching that conclusion the court held that Ind. Ann. Stat. § 9-2250 (Burns 1956 Repl.), IC 1971, 35-8-7-1, had

---

1. "Back-up time" is a slang expression which denotes the remaining unserved portion of a prison sentence of a parolee, especially a parolee who is convicted of committing another offense while on parole.

2. Appellate Rule 7.2(A)(1)(a) reads: "In all appeals from a final judgment, a certified copy of the motion to correct errors filed with the trial court shall constitute for all purposes the assignment of errors. No other assignment of error . . . shall be included in the record."

been superseded by Ind. Ann. Stat. § 13-1611 (Burns 1970 Supp.), IC 1971, 11-1-1-11, which reads in part as follows:

> "Any prisoner who commits a crime while at large upon parole and who is convicted and sentenced therefor *may* be required by the board to serve such sentence after the original sentence has been completed." (Our emphasis.)

The court then said:

> "The most prominent distinguishing characteristic about these two statutes is that in the earlier statute a prisoner returning to prison, after commission of a crime, while on parole 'shall be subject to serve the second sentence after the first sentence is served or annulled', while in the later statute, § 13-1611, a prisoner who commits a crime, while on parole, 'may be required' by the Indiana Parole Board to serve the second sentence after the first has been completed. The fact that the word 'may' was used in the later statute means that the Parole Board has discretion to decide whether the second sentence should run concurrent with or consecutive to the completion of the first sentence. The exercise of discretion can only occur after consideration of the relevant facts and therefore a hearing as contemplated by § 13-1611 is necessary before the Parole Board can make a justifiable determination.

> "Furthermore, Burns' Ind. Admis. Rules and Regs. Anno., 13-1666-1, reads as follows:

>> "'(13-1611)-1. Disposition of parole violators.—All parole violators will appear before the parole board as soon as practicable after their return to the institution. At that time the board will establish the date for further consideration of the inmate's case or authorize immediate reinstatement to parole supervision or discharge. (Ind. Parole Bd. Rule 16, adopted June 28, 1962, filed August 9, 1962).'

> "This administrative rule requires an appearance by every parole violator before the Indiana Parole Board. . . .

> "The Indiana Parole Board is bound to follow the Administrative Rules and it is the duty of the court to give validity to these rules made within the board's jurisdiction. We find that it was error for appellant to be denied a hearing following his return to prison and therefore this case must be reversed."

Anderson, however, may have had some kind of a hearing. Both his *pro se* petition and his testimony at the PC 1 hearing show that he at least appeared before the Parole Board after he was returned to the prison. Furthermore, neither his petition nor his testimony make any allegation that he did not have a fair hearing. Nor does the *Alcorn* opinion suggest that the Parole Board must follow any particular procedure in order to accord due process. But because *Alcorn* states that "discretion can occur only after consideration of the relevant facts", it is obvious that at the very least the parolee must be given an opportunity to present "relevant facts". Whether Anderson was denied that right when he appeared before the Parole Board upon his return to the prison, the record does not disclose.

Nor has an attempt been made to show that at a new hearing any evidence would be introduced tending to prove that the Parole Board's actions in this case have been capricious. There is only a suggestion that if given another chance petitioner will make a better case. That suggestion is made by this sentence in appellant's brief:

"If the trial court does not have jurisdiction to rule on matters affecting paroles, then it was error to have done so in finding number 16 above quoted[3]; but if it does have such jurisdiction, then it was error to have ruled upon this issue of fact without full evidentiary hearing, as requested by the Motion to Correct Errors filed herein, all questions in respect to this issue having been directed by the court *sua sponte* and not by counsel who was intimidated by the trial court in a long harangue concerning changes by the 1949 law taking away the judge's power to impose determinate sentences and a dispute as to what would be shown by the guilty plea and sentencing transcript not filed after the 1969 proceeding or even available prior to commencement of the post-conviction relief proceedings, after a qualified assent to going forward."

3. Finding 16 reads:
"16. The parole and/or conditional release of the petitioner was not unlawfully revoked and the petitioner was not otherwise unlawfully held in custody."

There is much merit in that suggestion. This particular trial judge's proclivity for improper comment from the bench has not gone unnoticed at the appellate level. See *Dean* v. *State* (1970), 254 Ind. 190, 258 N.E.2d 636, 21 Ind. Dec. 450; *Owens* v. *State* (1971), 255 Ind. 693, 266 N.E.2d 612, 24 Ind. Dec. 559; *Gray* v. *State* (1971), 256 Ind. 342, 268 N.E.2d 745, 25 Ind. Dec. 357; *Dixon* v. *State* (1972), 154 Ind. App. 603, 290 N.E.2d 731, 34 Ind. Dec. 399. In none of those cases, however, did the judge's misconduct occur at a post-conviction relief hearing. In each it occurred at the criminal trial and the remarks were generally directed toward the prosecuting attorney or the prosecuting witness at a trial without jury where the state nevertheless succeeded in proving its case beyond a reasonable doubt. As a consequence there was no occasion for reversal.

Typical of appellate level reaction to defense attempts to predicate error on such conduct is the following excerpt from *Owens, supra:*

"We do not commend such running commentaries by a judge who is clothed with the robe and behind the bench, with all the perogatives adhering to such an office, particularly when they are made against a young attorney and one who is unable to retaliate in kind. Tolerance and understanding are much more worthy judicial attitudes under the circumstances.

"Initially, we point out that the trial was conducted without a jury and that therefore any remarks made by the judge in the course of the trial could not be said to have prejudiced the defendant's case in the minds of legally untrained triers of fact. The basic issue is whether defendant received a fair and impartial trial. Defendant contends she received a hearing punctuated with quips and running commentary, judicial intrusion, and premature resolution of the most vital issue of fact. We point out, however, that the trial judge in actuality was critical of the prosecuting attorney. No evidence is apparent that defendant received an unfair trial by reason of certain comments by the judge, though we would question the propriety of some of the statements. The evidence was conclusive

that the defendant was guilty of shoplifting from the store." (255 Ind. at 696.)

Here, by contrast, the judge's remarks were directed to the attorney for the petitioner who had the burden of proof and who failed to sustain that burden. Our following comment in *Dixon, supra,* is more nearly applicable to such a case:

> "Sarcasm and ridicule emanating from the bench in a criminal trial are destructive weaponry. They contaminate the trial. Their use by the trial judge may have an incalculable adverse effect on the administration of justice, which is all the more devastating because the negative is often more difficult to prove than the positive. Whether directed at the prosecution or the defense or both, intimidated participants in the trial may be unable to perform their proper function—a cowed defense counsel fails to object to inadmissible evidence—a rattled witness becomes incoherent. One such occurrence may thwart justice. If such adverse effects can be demonstrated, the error created will be reversible for denial of due process of law. State v. Lawrence (1954), 162 Ohio St. 412, 123 N.E.2d 271." (290 N.E.2d at 740.)

Our reading of the transcript of the post-conviction relief hearing convinces us that the judge's remarks may well have confused and distracted the young deputy public defender (if they did not actually intimidate him) to the extent that he failed to elicit from his witness (petitioner Anderson) all the relevant testimony he could have given. We therefore deplore the judge's impropriety but find in it no cause for reversal. Not even the remotest possibility has been shown that a properly conducted new trial would produce a different result.

Judgment affirmed.

Buchanan, P.J., concurs; Sullivan, J., concurs in result.

NOTE.—Reported at 300 N.E.2d 674.