Leo D. Jenkins, Warden, Indiana State Prison, Indiana Parole Board et al. *v.* Gayle Wilson

[No. 3-1175A243. Filed August 23, 1977.]

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellants.

*Harriette Bailey Conn, [Mrs.],* Public Defender of Indiana, *Peter W. Bullard,* Deputy Public Defender, for appellee.

HOFFMAN, J.—The Warden of the Indiana State Prison appeals from the judgment of the LaPorte Circuit Court holding that appellee Gayle Wilson's parole was revoked without due process of law and restoring Wilson to parole.

On August 13, 1969, Wilson was sentenced by the Greene Circuit Court to serve an indeterminate term of not less than one nor more than fourteen years at the Indiana State Prison, pursuant to a conviction of house-breaking in the daytime to commit a felony. On December 11, 1970, Wilson was released on parole. While on parole Wilson was convicted on April 21, 1971, in the Michigan City Court of two counts of assault and battery and one count of malicious trespass and was sentenced to serve 180 days at the Indiana State Farm. On May 13, 1971, a member of the Indiana Parole Board ordered Wilson returned to the Indiana State Prison as a parole violator, and Wilson was returned to confinement on May 20, 1971.

On July 2, 1971, Wilson received a pass to go before the parole board. The pass did not state the purpose of the appearance or the parole violations charged, although Wilson thought that he was to see the parole board for a hearing. The parole board did not, at that time, advise him of the parole violation charges nor did it ask him if he wished to speak on his own behalf. Wilson's parole was formally revoked. He was "set" one year plus his Indiana State Farm time and was scheduled for his next appearance before the parole board in September of 1972.

Wilson was in fact charged with the following alleged parole violations:

1) conviction of malicious property damage,

2) conviction of assault and battery,

3) drinking,

4) association with inmates, and

5) suspicion of carrying a concealed weapon.

On April 4, 1975, Wilson sought a writ of habeas corpus from the LaPorte Circuit Court, alleging that his parole was revoked without a hearing in violation of his right to due process of law. After a hearing on Wilson's petition, the trial court found that at the July 2, 1971, appearance before the Indiana Parole Board Wilson was given no prior written notice of the parole violation charges, no opportunity to speak in his own behalf prior to the announcement of the board's decision, and no reason for the revocation of his parole. The trial court held that the conduct of the revocation hearing violated Wilson's right to due process of law and ordered that Wilson be immediately restored to his former parole status.

Appellant Jenkins, Warden of the Indiana State Prison, raises two issues in this appeal:

1) whether the trial court erred in finding that Wilson was denied due process of law in his parole revocation hearing; and

2) whether the trial court erred in ordering Wilson restored to his former parole status.

In *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, decided June 29, 1972, almost a year after the revocation of Wilson's parole, the United States Supreme Court held that parolees charged with violations of parole are within the protection of the Due Process Clause of the Fourteenth Amendment. Specifically, the Supreme Court held that parolees are entitled by the Due Process Clause to a two-stage parole revocation procedure — a "preliminary hearing" to determine whether there is probable cause to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions and a final revocation hearing prior to the final decision on revocation to consider whether the facts as determined warrant revocation. *Morrissey v. Brewer, supra,* 408 U.S. at 485-488, 92 S.Ct. at 2602-2603. The court determined that the minimum requirements of due process include written notice of the charges of parole violation, disclosure to the parolee of the evidence against him, an opportunity to be heard in person and to present evidence, the right to confront and cross-examine adverse witnesses, a "neutral and detached" hearing board, and a written statement by the fact-finders of the evidence relied upon and the reasons for revoking parole. *Morrissey v. Brewer, supra,* 408 U.S. 489-90, 92 S.Ct. at 2604. The court foreclosed the retroactive application of the *Morrissey* decision by holding that the due process requirements announced therein were applicable only to future parole revocations. *Id.,* 403 U.S. at 490, 92 S.Ct. a 2604. Because *Morrissey v. Brewer, supra,* was given prospective application by the Supreme Court, Wilson's invitation to apply the *Morrissey* due process requirements to his pre-*Morrissey* revocation hearing[1] is declined.

At the time of Wilson's parole revocation, parole revocation proceedings were governed by IC 1971, 11-1-1-11 (Burns Code Ed.), (formerly Ind.Stat.Ann. § 13-1611 (Burns 1970 Supp.)), which provides:

---

1. Indiana parole revocation hearings conducted after the decision in *Morrissey v. Brewer, supra,* are governed by the due process requirements announced therein. *See, Russell v. Douthitt* (1973), 261 Ind. 428, 304 N.E.2d 793.

"Any prisoner who commits a crime while at large upon parole and who is convicted and sentenced therefor may be required by the board to serve such sentence after the original sentence has been completed.

"*Whenever a paroled prisoner is accused of a violation of his parole he shall be entitled to a hearing on such charges before the Indiana parole board under such rules and regulations as the Indiana parole board may adopt.* If the Indiana parole board shall find that the prisoner has violated his parole it shall issue an order rescinding such parole but if they shall find that there has been no violation of the parole, it shall issue an order for his release from custody; but no such order of discharge shall be made in any case within a period of less than a year after the date of release on parole except that when the period of the maximum sentence provided by law shall expire at an earlier date, then a final order of discharge must be made and a certificate of discharge issued to the paroled prisoner not later than the date of expiration of the said maximum sentence." (Emphasis added.)

The only rule adopted by the parole board for conducting parole revocation hearings is Ind. Admin. Rules and Regs. (11-1-1-11)-1 (Burns Code Ed.), (formerly Ind. Admin. Rules and Regs. (13-1611)-1), which provides:

"Disposition of parole violators.— All parole violators will appear before the parole board as soon as practicable after their return to the institution. At that time the board will establish the date for further consideration of the inmate's case or authorize immediate reinstatement to parole supervision or discharge. [Ind. Parole Bd. Rule 16, adopted June 28, 1962, filed August 9, 1962]."

In *Alcorn v. State* (1972), 258 Ind. 185, 279 N.E.2d 800, the appellant, who was convicted of another crime while on parole, had no hearing before the parole board determined that he should serve the second sentence consecutively to his original sentence. Our Supreme Court interpreted IC 1971, 11-1-1-11, *supra*, to mean that the parole board has discretion to decide whether the second sentence should run concurrent with, or consecutive to, the completion of the first sentence. The court stated that:

"The exercise of discretion can only occur after consideration of the relevant facts and therefore a hearing as contemplated

by . . . [IC 1971, 11-1-1-11] is necessary before the Parole Board can make a justifiable determination." *Id.*, 258 Ind. at 188, 279 N.E.2d at 802.

The court further interpreted Ind. Admin. Rules and Regs. (11-1-1-11)-1, *supra*, to require an appearance by every parole violator before the Indiana Parole Board. The court found it error to deny the appellant a hearing following his return to prison.

Subsequent decisions have interpreted the hearing requirement as providing the parolee the opportunity to be heard. *Jenkins, Warden, et al. v. Harvey* (August 17, 1977), 174 Ind. App. 67, 367 N.E.2d 1. (No. 3-1175 A 244); *Anderson v. State* (1973), 157 Ind. App. 440, 300 N.E.2d 674.

While *Alcorn* involves the exercise of the parole board's discretion to require a prisoner to serve his second sentence consecutively to the first, the procedures announced therein apply with equal force to parole revocation hearings for three reasons. First, *Alcorn v. State, supra*, applies the hearing requirement of the second paragraph of IC 1971, 11-1-1-11, *supra*, governing parole revocations,[2] to the parole board's power to require the consecutive service of subsequent sentences.[3] Second, *Alcorn v. State, supra*, can be fairly read to encompass all hearings pursuant to IC 1971, 11-1-1-11, *supra*, because the court interprets Ind. Admin. Rules and Regs., (11-1-1-11)-1, *supra*, to require an appearance before the parole board by every parole violator. *Alcorn v. State, supra*, 258 Ind. at 188, 279 N.E.2d at 802. Third, in determining whether the conduct of the parolee constitutes a violation sufficient to warrant revocation of his parole, the parole board is required to exercise its discretion. The *Alcorn* holding that the

---

2.  "Whenever a paroled prisoner is accused of a violation of his parole *he shall be entitled to a hearing on such charges* before the Indiana parole board under such rules and regulations as the Indiana parole board may adopt. If the Indiana parole board shall find that the prisoner has violated his parole it shall issue an order rescinding such parole but if they shall find that there has been no violation of the parole, it shall issue an order for his release from custody; . . . ." (Emphasis added.) IC 1971, 11-1-1-11 (Burns Code Ed.).

3.  "Any prisoner who commits a crime while at large upon parole and who is convicted and sentenced therefor may be required by the board to serve such sentence after the original sentence has been completed." IC 1971, 11-1-1-11 (Burns Code Ed.).

board's exercise of discretion can occur only after a hearing and consideration of the relevant facts, *Id.*, 258 Ind. at 188, 279 N.E.2d at 802, therefore applies equally to the determination to revoke parole.

In granting the habeas corpus relief the trial court correctly interpreted *Alcorn v. State, supra,* to require that a paroled prisoner accused of a violation of his parole was entitled to a hearing before the parole board and that a consideration of all relevant facts was necessary before the parole board could make a justifiable determination on the charge of parole violation.

However, a "consideration of relevant facts" does not require a certain enumerated mode of procedure. *Alcorn* does not suggest that any particular procedure must be followed by the parole board in order to accord due process. *Anderson v. State, supra.*

However, it is clear that a "hearing" such as that required by IC 1971, 11-1-1-11, *supra,* necessarily implies the opportunity to be heard. *Jenkins, Warden, et al. v. Harvey, supra; Anderson v. State, supra.* Thus, the parolee is "entitled to present his position, whether it be one of denial, explanation, mitigation or merely supplication." *Jenkins, Warden, et al. v. Harvey, supra.*

Due process is a flexible concept calling for such procedural protection as the particular situation requires. The touchstone of due process is fundamental fairness, *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed. 2d 656, rather than a detailed enumeration of procedures to be employed.

The Warden also contends that the trial court committed error in immediately restoring Wilson to his former parole status as relief from the due process violation found. A brief discussion of this issue should provide some guidance to the Bench and Bar in future cases of this nature.

In *State v. Jeffers* (1976), 168 Ind. App. 284, 342 N.E.2d 681 (transfer denied), this court faced the same issue. Upon Jeffers' motion for post-conviction relief pursuant to Ind. Rules of Procedure, PCR 1, the trial court found that Jeffers' parole had been revoked in violation of his right to due process of law and

directed that he be reinstated on parole. The State argued that the court should have directed a return to custody with instructions that a proper hearing be conducted within a reasonable time. This court held:

"Jeffers was entitled to have the order revoking his parole set aside, and it does not appear that the court abused its discretion in permitting Jeffers to be returned to parole status pending any further proceedings. We do not read the order as prohibiting the parole board from conducting a proper revocation proceeding within a reasonable time upon the matters alleged in this charge." *Id.*, 342 N.E.2d at 684.

Thus, while a trial court has the discretion to restore a parolee who has suffered a denial of due process to his former parole status, the parole board is not prohibited from conducting a proper revocation proceeding within a reasonable time.

The judgment of the trial court is affirmed.

Garrard, J. concurs.

Robertson, C.J., participating by designation, concurs.

NOTE—Reported at 366 N.E.2d 663.