JOHN HAWKINS, JR. ET AL. *v.* LEO D. JENKINS, WARDEN, INDIANA STATE PRISON ET AL.

[No. 376S90. Filed April 6, 1978.]

138

*Harriette Bailey Conn* (*Mrs.*), Public Defender of Indiana, *Peter W. Bullard,* Former Deputy Public Defender, for appellants.

*Theodore L. Sendak,* Attorney General, *David A. Arthur,* Deputy Attorney General, for appellee.

GIVAN, C.J.—This is an appeal from a judgment of the trial court covering eight separate petitions for habeas corpus filed by inmates of the Indiana State Prison. In this judgment the trial court partially granted relief and partially denied relief to the various petitioners. All eight petitioners were, at one time, convicted of an offense and were incarcerated in the prison. Each was paroled and while free on parole was convicted of another crime. Each was subsequently incarcerated and appeared before the Parole Board at which time it was decided that parole would be revoked and their new sentences held in abeyance, under the authority of IC § 11-1-1-11 [Burns 1973].

Petitions for writs of habeas corpus were filed in the La-Porte Circuit Court, alleging that these abeyance procedures were in violation of due process of law and that the statute authorizing the Board to impose such sentences was unconstitutional. The trial court denied relief to petitioners Loehr and Ronald White. However no appeals were taken from these decisions. The trial court also denied relief to appellant Hawkins. The trial court granted relief to Sims, Norvelle White, Cross, Ramsey and Baurle.

Before discussing the merits of each of these separate decisions within the trial court's judgment, we point out that only one of the petitions filed in the trial court, that of Norvelle White, was in fact a proper writ of habeas corpus. One is entitled to habeas corpus only if he is entitled to his immediate release from unlawful custody. The other petitions, although denominated petitions for habeas corpus, were in fact petitions for relief under post-conviction Rule 1, § 1(a)(5). The trial judge in this case is a learned jurist with many years of experience in habeas corpus proceedings by reason of the fact that he was the circuit judge in LaPorte County where the state prison is located. An examination of his judgment covering these cases

discloses that he fully understood the law of habeas corpus and the law under the post-conviction relief rule and that he correctly treated each of the petitions as to their content rather than their erroneous captions. Appellees have challenged the jurisdiction of the trial court to hear these cases, claiming that they should have been transferred to the sentencing courts under Rule PC 1, § 1(c), which rule reads in part, ". . . but if a petitioner applies for a writ of habeas corpus, in the court having jurisdiction of his person, attacking the validity of his conviction or sentence, that court shall under this rule transfer the cause to the court where the petitioner was convicted or sentenced, . . ." However none of the petitions involved in the case at bar attacks the validity of the petitioner's conviction or sentence. The only question presented by the petitions is whether or not the Parole Board of the state prison, sitting in LaPorte County, had the authority to revoke the various paroles and hold new sentences in abeyance. The trial court was correct in retaining the cases in LaPorte County and rendering decision on the various petitions.

This Court has held that no court has jurisdiction to entertain a petition for a wirt of habeas corpus unless it is alleged that the prisoner is entitled to immediate discharge. See *Hendrixson* v. *Lash*, (1972) 258 Ind. 550, 282 N.E.2d 792. A prisoner can only obtain a discharge through habeas corpus. He cannot obtain a modification of his commitment. *Shoemaker* v. *Dowd*, (1953) 232 Ind. 602, 115 N.E.2d 443.

The only petitioner involved in this appeal who was entitled to his immediate release was Norvelle White. None of the others were entitled to such relief because their legal sentences had not expired. Therefore the trial court had no jurisdiction to grant habeas corpus relief to any of the other petitioners. However since the trial court did treat the others under PC 1, § 1(a) (5), and correctly proceeded to decide the issues thereunder, this Court will do the same and treat the

petition as a post-conviction relief case. This raises an additional problem that none of the petitioners were originally sentenced to a minimum of greater than ten years, a requirement for this Court to exercise jurisdiction in a post-conviction relief case. PC 1, § 7; AP 4(A)(7). Nevertheless, since these cases were previously consolidated, rather than remanding the case to the Court of Appeals we will exercise our discretionary authority and decide the case on its merits.

Appellant Hawkins first claims the trial court erred in holding that IC § 11-1-1-11 [Burns 1973] is constitutional. The statute provides that any "prisoner who commits a crime while at large upon parole and who is convicted and sentenced therefor, may be required by the Board to serve such sentence after the original sentence has been completed." The general rule in Indiana is that consecutive sentencing is not permitted unless a specific statute authorizes it. *Baromich* v. *State*, (1969) 252 Ind. 412, 249 N.E.2d 30. The above statute is an exception to the general rule because it expressly renders to the Parole Board the authority to impose consecutive terms on a parolee who has committed a crime while on parole.

Hawkins asserts that the statute unconstitutionally vests legislative and judicial authority in an administrative body. However it is clear that the Board does not have such authority; rather the Board is empowered by the legislature to determine the length of incarceration, not the length of the sentence. Moreover, the Parole Board has been recognized as an essential link in our criminal justice system. See *Morrissey* v. *Brewer*, (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. There is nothing unclear or misleading about the statute. It is a clear expression of a legislative intent to vest in the Parole Board the discretion to decide whether a sentence arising out of a crime committed while on parole should run concurrent with or consecutive to the completion of the first sentence. *Alcorn* v. *State,*

(1972) 258 Ind. 185, 279 N.E.2d 800. Thus, the trial court did not err in holding that the statute was constitutional.

The other contention of Hawkins involves essentially the same issue of law as the contentions of the respondent Jenkins. Hawkins asserts that the trial court erred in finding that he had been afforded due process of law. Jenkins contends the trial court erred in finding that Sims, Norvelle White, Cross, Ramsey and Baurle were deprived of due process in their respective hearings.

In 1972, the United States Supreme Court in *Morrissey* v. *Brewer, supra,* set forth specific guidelines as minimum requirements for due process in parole revocation hearings. However the *Morrissey* requirements are not retroactive. 408 U.S. at 490, 92 S.Ct. at 2604, 33 L.Ed.2d at 499. Thus the proceedings involving Sims, Norvelle White, Cross and Ramsey, all of which occurred prior to the effective date of *Morrissey,* must be judged solely in light of IC § 11-1-1-11 [Burns 1973], as interpreted by *Alcorn* v. *State, supra.* In the *Alcorn* case this Court held that the statute vested in the Parole Board the discretion to decide whether consecutive or concurrent sentences should be imposed for a crime committed while on parole. The Court stated however, "The exercise of discretion can only occur after consideration of the relevant facts, and therefore a hearing as contemplated by § 13-1611 (IC § 11-1-1-11 [Burns 1973]) is necessary before the Parole Board can make a justifiable determination." 258 Ind. at 188, 279 N.E.2d at 802. The Court of Appeals, in *Anderson* v. *State,* (1973) 157 Ind. App. 440, 300 N.E.2d 674, held that because *Alcorn* states that discretion can occur only after "consideration of the relevant facts" it is obvious that at the very least the parolee must be given an opportunity to present any relevant facts. The trial judge in the case at bar interpreted *Alcorn* and *Anderson* to require that the parolee be given notice of the hearing and its purpose; that he be given an opportunity to speak or present evi-

dence on his behalf; and that the Board issue a written decision.

The trial court's interpretation was correct. Without these minimum requirements the hearing mandated by the statute would be meaningless. This is not to say however that the Parole Board is required to appoint counsel in each case and to have a full-blown trial on every charge of parole violation. *Russell* v. *Douthitt*, (1974) 261 Ind. 428, 304 N.E.2d 793.

It is sufficient if the Board notifies the parolee of the hearing and its purpose, affords him an opportunity to speak and renders a written decision informing him of the outcome.

It has long been the rule in Indiana that the discretion of the Parole Board is not subject to supervision or control of the courts. *Dowd* v. *Basham*, (1954) 233 Ind. 207, 116 N.E.2d 632; *Terry* v. *Byers*, (1903) 161 Ind. 360, 68 N.E. 596. However, as we said in *Alcorn* v. *State, supra,* the exercise of discretion can only occur after consideration of the relevant facts and a hearing as mandated by IC § 11-1-1-11 [Burns 1973]. Therefore, the Board must in all parole revocations and abeyance cases conduct a hearing in accordance with the statute; however once the Board has fulfilled these minimum requirements, it has almost absolute discretion in making its decision and such discretion will not be interfered with by the courts.

In the case at bar, Sims, Norvelle White, Cross and Ramsey, were each given a pass on the day of the hearing, which said only, "Guard's Hall," "parole board pass," or something similar. They were told none of the specific reasons for the hearing or the allegations against them, giving them no time to prepare or to have witnesses appear on their behalf, nor were any of them given the opportunity to speak at the hearing. In fact White asked to speak but was not allowed because the Board did not have time. Finally, none of them received any notice that their sentences were being held in abeyance. Thus we find that the trial court

was correct in ruling that Sims, Norvelle White, Cross and Ramsey were deprived of their constitutional rights to due process of law.

The hearing for Baurle was held in July, 1972. This was subsequent to the *Morrissey* opinion. Therefore it must be governed by those requirements. In that case the Court held that in the final hearing on parole revocation due process requires: (1) written notice of claimed violations; (2) disclosure of evidence against the parolee; (3) opportunity to be heard in person and to present evidence; (4) right to confront and cross-examine adverse witnesses; (5) a neutral hearing body; and (6) a written statement of the decision. The Court refused to decide whether the parolee was entitled to counsel at this hearing. The trial court, in the case at bar, found that Baurle was not notified that parole revocation and abeyance would be determined at the hearing and that he was denied the opportunity to speak and present evidence. These clearly were violations under *Morrissey* and also, as the trial court determined, under our prior holding in *Alcorn*. Thus the trial court did not err in granting relief to petitioner Baurle under PC 1, § 1 (a) (5).

Finally, the hearing for Hawkins was held on November 8, 1974, and therefore subject to still another United States Supreme Court decision, *Gagnon* v. *Scarpelli*, (1973) 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. In that case the Court affirmed the *Morrissey* requirements for due process in parole revocation hearings and further held that whether counsel is to be provided in such hearings should be decided on a case-by-case basis in the exercise of the Parole Board's sound discretion. However the Court stated that counsel should be provided where the parolee makes a request for counsel based on a timely and colorable claim: (1) that he has not committed the alleged parole violation or (2) that there are substantial reasons which justified or mitigated the violation. 411 U.S. at 790, 93 S.Ct. at 1763-64, 36 L.Ed.2d at 666. See also *Russell* v. *Douthitt*, (1974) 261 Ind. 428, 304 N.E.2d 793.

In the case at bar Hawkins was given written notice on October 10, 1974, that he was to appear at the November Parole Board meeting for his parole revocation hearing, and that the allegation against him was that he had committed another crime. Hawkins made no request for counsel. At the hearing he admitted his conviction for armed robbery while on parole and stated only that he wished the Board "would turn me over," a phrase commonly taken to mean being discharged from service on one sentence to begin serving another. When asked if he wanted to speak further he replied no. No other witnesses appeared. The Board then deliberated and rendered a written decision to assess him one year for parole violation and hold his new sentence in abeyance. Hawkins was informed by the Board immediately after the decision. Hence it is clear that under *Morrissey, Gagnon* and this Court's opinion in *Russell* v. *Douthitt, supra,* Hawkins was afforded his constitutional rights to due process of law in his parole revocation and abeyance hearing.

The judgment of the trial court is in all respects affirmed.

DeBruler, Hunter, Pivarnik and Prentice, JJ., concur.

NOTE.—Reported at 374 N.E.2d 496.