Omer YOUNG, Jr., Appellant,

v.

Jack DUCKWORTH, Warden, Appellee.

No. PS 417.

Supreme Court of Indiana.

Sept. 12, 1979.

Rehearing Denied Nov. 8, 1979.

Omer Young, Jr., pro se.

Theodore L. Sendak, Atty. Gen. of Indiana, David A. Arthur, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Petitioner appears *pro se* throughout this proceeding. This cause arose when petitioner filed a petition for Writ of Habeas Corpus in the La Porte Circuit Court on December 23, 1977.

The record shows that petitioner, Omer Young, Jr., was sentenced from the Fulton Circuit Court by the Honorable Wendell C. Tombaugh, on April 19, 1976, to an indeterminate term of from not less than one (1) nor more than ten (10) years for the offense of assault and battery with intent to commit a felony, rape. He appeared before the Indiana Parole Board for parole release hearings on October 7, 1976, April 6, 1977, and October 6, 1977. Each of the three times the Parole Board denied parole release to the petitioner, giving as a reason therefor the seriousness of the offense.

When the La Porte Circuit Court Judge, Robert Gettinger, Jr., received the Petition for Writ of Habeas Corpus, he construed it as one for post-conviction relief and ordered it transferred to the Fulton Circuit Court, the Court of Young's conviction. The Fulton Circuit Court refused to construe the petition as one for post-conviction relief and returned it to the La Porte Circuit Court. The La Porte Circuit Court Judge then examined the petition and denied it without hearing on March 6, 1978. Petitioner Young then submitted a Motion to Correct Errors to the La Porte Circuit Court which was again summarily overruled. A praecipe was filed by petitioner on March 29, 1978, and after extensions of time at his request the record was filed on November 16, 1978, and the petitioner-appellant's brief was filed on February 24, 1979.

In his Motion to Correct Errors, the petitioner simply stated that the court erred in denying his petition for writ of habeas corpus "for the reason stated in rhetorical paragraph III of said petition." Rhetorical paragraph three states the conclusion that appellant is illegally restrained because he was denied due process in the denial of his parole and because there is no appeal from a denial of parole. There is no statement of facts or grounds upon which the errors are based.

Petitioner argues in his brief that he was denied due process when there was no hearing held on the denial of his writ. He also argues that the Indiana Parole Board was authorized by statute to make parole determinations under Ind. Code § 11-1-1-9 (Burns 1973) (amended 1978) and that said statute is unconstitutional in that it fails to give the Indiana Parole Board reasonable and adequate guidelines under which to gather pertinent information, conduct meaningful hearings, and make reasoned and articulated decisions based upon these guidelines. He further claims that the seriousness of the offense is an invalid criteria for the Indiana Parole Board to utilize in arriving at a parole determination. It is the State's position that, therefore, any error is waived. This

position appears well taken as we have held that an issue not specifically set out in the motion to correct errors is not available on appeal and that errors should not be hidden in a generality to be raised later specifically on appeal. *Guardiola v. State,* (1978) Ind., 375 N.E.2d 1105. Bald general assertions of error do not constitute substantial compliance with our rules. *Anderson v. Indiana State Employees Appeals Commission,* (1977) Ind.App., 360 N.E.2d 1040. The requirements of Ind.R.Tr.P. 59(B) are not met by such general conclusions as this motion contained. Although Young proceeds *pro se,* the same standards for drafting motions to correct error and appellate briefs apply to him as they do to others, and errors are waived if such rules are not complied with. *Owen v. State,* (1978) Ind., 381 N.E.2d 1235.

■ Concerning the denial of Young's petition for writ of habeas corpus, we recently stated in a unanimous decision authored by Chief Justice Givan that:

"This Court has held that no court has jurisdiction to entertain a petition for a writ of habeas corpus unless it is alleged that the prisoner is entitled to immediate discharge. *See Hendrixson v. Lash,* (1972) 258 Ind. 550, 282 N.E.2d 792. A prisoner can only obtain a discharge through habeas corpus. He cannot obtain a modification of his commitment. *Shoemaker v. Dowd,* (1953) 232 Ind. 602, 115 N.E.2d 443."

*Hawkins v. Jenkins,* (1978) Ind., 374 N.E.2d 496, 498. It is obvious in this case that neither the La Porte Circuit Court nor the Fulton Circuit Court had jurisdiction to entertain a petition for a writ of habeas corpus inasmuch as petitioner was serving time under a proper commitment, his sentence had not expired and he had not been denied good time or credit time. He is not seeking a correction of the beginning or end of his sentence. He is merely asking for release. Since the record shows on its face that petitioner was not entitled to release, the Court properly denied the petition summarily and without a hearing.

■ If we consider this petition as one properly presented under post-conviction

Rule 1 § 1(a)(5), an additional problem is presented because petitioner was not sentenced to a minimum of greater than ten years, a requirement for this court to exercise jurisdiction in post-conviction relief. Ind.R.P.C. 1, § 7; A.P. 4(A)(7). To avoid remanding this case, at this point, to the Court of Appeals, we will decide it on its merits under our discretionary authority to do so. *Hawkins v. Jenkins,* (1978) Ind., 374 N.E.2d 496.

Even if the petitioner had properly presented an issue for post-conviction relief, there was no issue for the court to consider or that required it to hold a hearing.

Petitioner had appeared at three hearings. These hearings were to determine whether or not he should receive parole initially, and were not revocation or abeyance hearings. Ind. Code . § 11–1–1–9 (Burns 1973) (amended 1978) set out procedures for release on parole as follows:

"The Indiana parole board is hereby authorized to release on parole, pursuant to the laws of the state of Indiana, any person confined in any penal or correctional institution in this state except persons under sentence of death. It shall conduct hearings at each correctional institution at such time as may be necessary for a full study of the cases of prisoners eligible for release on parole and to determine when and under what conditions and to whom parole may be granted. All paroles shall issue upon order of the board, duly adopted.

Within one [1] year after his admission and at such intervals thereafter as it may determine, the Indiana parole board shall secure and consider all pertinent information regarding each prisoner, except prisoners under sentence of death, including the circumstances of his offense, his previous social history and criminal record, his conduct, employment and attitude in prison, and the reports of such physical and mental examinations as have been made.

Before ordering the parole of any prisoner, the Indiana parole board shall have the prisoner appear before it, and shall

interview him. A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered to be a reduction of sentence or pardon. A prisoner shall be placed on parole only when arrangements have been made for his proper employment, or for his maintenance and care, and only when the Indiana parole board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. Every prisoner while on parole shall remain in the legal custody of the warden or superintendent of the institution from which he was paroled but shall be subject to the orders of the Indiana parole board.

The Indiana parole board may adopt such other rules not inconsistent with law as it may deem proper or necessary, with respect to the eligibility of prisoners for parole, the conduct of parole hearings, or conditions to be imposed on parolees. Whenever an order for parole is issued it shall recite the conditions thereof. . . ."

Petitioner's allegation is that his restraint is illegal because he was denied due process and because there is no appeal from the denial of parole. He alleges that the statutes are unconstitutional in that they do not sufficiently limit the manner in which the parole board exercises its discretion. In *Hawkins v. Jenkins, supra,* we stated: "It has long been the rule in Indiana that the discretion of the Parole Board is not subject to supervision or control of the courts," citing *Dowd v. Basham,* (1954) 233 Ind. 207, 116 N.E.2d 632; *Terry v. Byers,* (1903) 161 Ind. 360, 68 N.E. 596. Those cases involved parole revocations and abeyance. In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, et al.,* (1979) —— U.S. ——, 99 S.Ct. 2100, 60 L.Ed.2d 668, the United States Supreme Court discussed the application of the due process clause to parole release procedures as follows:

"The Due Process Clause applies when government action deprives a person of liberty or property; accordingly, when there is a claimed denial of due process we have inquired into the nature of the individual's claimed interest.

"[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake . . . ." *Board of Regents v. Roth,* 408 U.S. 564, 570–571, 92 S.Ct. 2701, 2705–2706, 33 L.Ed.2d 548 (1972).

This has meant that to obtain a protectible right

"a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.,* at 577, 92 S.Ct. 2709.

There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1977).

Decisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection; there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations. *See Id.,* at 225, 96 S.Ct. 2538; *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1977); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274–279, 50 L.Ed.2d 236 (1976). This is especially true with respect to the sensitive choices presented by the administrative decision to grant parole release."

▮ The court further discussed that the parole determination must include consideration of the entire record, including the gravity of the offense, behavior records and an opportunity for the inmate to appear to insure that the records are records relating

to his case and to allow him the opportunity to present any special considerations. Such determinations do not require the parole board to specify the particular "evidence" upon which their discretionary determination is based. *Id.* at ⸺ U.S. ⸺, 99 S.Ct. 2100. A procedure which affords an opportunity to be heard and when parole is denied, informs the inmate in what respects he falls short of qualifying for parole, affords the process that is due. There is no allegation by this petitioner that the parole board did not properly proceed in any of his three hearings. His only complaint is that the reason given, i. e., "seriousness of the offense" is not a sufficient reason for denial of parole and is necessarily arbitrary and a denial of due process.

 Petitioner was committed by a court in jurisdiction. He appeared before the parole board on three occasions. He was given hearings at which he was present and given an opportunity to speak. A correction was made in his institutional packet. He received a written statement of reasons for denial of parole approximately one week after his hearing. Young was afforded his constitutional right to due process of law and the denial of his parole was proper. Finding no error, we affirm the trial court.

All Justices concur.