## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 28 2020, 8:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Antonio T. Sims
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antonio T. Sims, *Appellant*, | January 28, 2020 |
| | Court of Appeals Case No. 19A-MI-2032 |
| v. | Appeal from the LaPorte Circuit Court |
| Ron Neal, *Appellee*. | The Honorable Thomas J. Alevizos, Judge |
| | Trial Court Cause No. 46C01-1907-MI-1818 |

**Brown, Judge.**

[1] Antonio T. Sims, *pro se*, appeals from the denial of his Verified Petition for Writ of Habeas Corpus asserting he was being unlawfully detained by an expired commitment order. We affirm.

### *Facts and Procedural History*

[2] Sims is currently incarcerated in the Indiana Department of Correction ("DOC") for sentences received in cause number 49G05-0706-FB-112381 ("Cause No. 112381"). The relevant facts as discussed in Sims's direct appeal follow:

> On June 17, 2007, Indianapolis resident Kathy Germann and her husband, Gordon, spent the afternoon with their two grown children and their families because it was Father's Day. Kathy and Gordon went home between 6:00 and 6:30 p.m. Their daughter, Sarah Craft, later called and invited Kathy to accompany her on some errands. Sarah picked up Kathy around 8:45 p.m. in her van.
>
> The two women drove to a nearby Speedway station, and Sarah got out of the van to enter the store before pumping gas. Kathy stayed inside the van, and the keys remained in the ignition. A man, later identified as Sims, opened the driver's side door and demanded, "Give me all your money, B * * * *." Kathy saw what she believed was a gun pointed at her face. Sims climbed into the van's driver's seat, and Kathy tossed her purse to him. He told her to get out of the van, and, as she struggled with her seat belt, Sims warned her not to look at him or he would "blow [her] f * * * ing head off." Once Kathy was out of the van, Sims sped away. Police located him with the van a short time later. Sims led police on a high-speed chase before jumping out of the van and fleeing on foot. While running from police, Sims dropped purses belonging to Kathy and Sarah. During a subsequent search of the van, police found a pellet gun on the front passenger side

floorboard. After his arrest, Sims signed a waiver of rights form. He then confessed during a taped interview.

The State charged Sims with Count I: carjacking, a Class B felony, Count II: robbery as a Class B felony, Count III: intimidation as a Class C felony, Count IV: criminal recklessness as a Class D felony, Count V: resisting law enforcement as a Class D felony, and Count VI: resisting law enforcement as a Class A misdemeanor. Sims waived a jury trial, and the trial court conducted a bench trial and found him guilty as charged. When entering judgment of conviction, the court reduced the conviction under Count II to robbery as a Class C felony, the conviction under Count III to intimidation as a Class A misdemeanor, and the conviction under Count IV to criminal recklessness as a Class B misdemeanor. The court then sentenced Sims to eighteen years on Count I, three years on Count II, one year on Count III, 180 days on Count IV, three years on Count V, and one year on Count VI. The court ordered the sentences for Counts I, II, III, IV, and VI to run concurrently and the sentence for Count V to be served consecutive with Count I, resulting in an aggregate sentence of twenty-one years.

*Sims v. State*, No. 49A05-0712-CR-673, slip op. at 1 (Ind. Ct. App. August 27, 2008). This Court found Sims's convictions for carjacking and robbery violated Indiana's constitutional prohibition against double jeopardy and that one must be vacated. Upon remand, a revised sentencing order was issued on January 8, 2009, vacating the conviction and sentence in Count II and leaving undisturbed the remaining convictions and sentences.

[3] A February 13, 2015 entry in the Chronological Case Summary ("CCS") in Cause No. 112381 states: "Judgment . . . 1. 35-42-5-2(1)/FB: Carjacking

Finding of Guilty" and "Sentenced . . . 1. 35-42-5-2(1)/FB: Carjacking . . . Term: 18 Yr."[1] Appellant's Appendix Volume II at 8.

[4] On December 4, 2017, Sims filed a writ of habeas corpus under cause number 46C01-1712-MI-2020 in the LaPorte Circuit Court and claimed that he was being held in the DOC without a commitment order. Specifically, he stated that, as of February 13, 2015, the "certified chronological case summary under [Cause No. 112381], judgment of conviction was enter[ed] for carjacking as a class B-felony only" and the commitment order was "withheld," and that "the[] warden Neal . . . refuse to issue a[n] official certificate of final discharge (State Form #49) for the[] following Oct. 12[,] 2007 Expired sentences: No. 1-FB26-Carjacking; No. 2-MA21-Intimidation; No. 3-MB01-Criminal Recklessness; No. 4-FD63-Resisting Law Enforcement; No. 5-MA16-Resisting Law Enforcement." Appellee's Appendix Volume II at 24-25.

[5] On August 8, 2018, the State filed a motion in Cause No. 112381 to update the online chronological case summary, indicating that Sims's conviction was documented in the court's paper file and that it sought to show the LaPorte Circuit Court updated CCS in the habeas action, along with the abstract of judgment and the order vacating Count II, to demonstrate that Sims was still serving his sentence under that cause number. The court granted the motion

---

[1] The CCS also contains an entry for "10/04/2007" that lists judgment in other counts related to Sims's convictions in Cause No. 112381.

and updated the CCS to include entries reflecting the convictions and sentences in Counts III-VI.[2]

[6]    On August 28, 2018, the LaPorte Circuit Court issued an order which denied Sims's habeas corpus petition and indicated:

> At the hearing on August 9, 2018, the Respondent presented evidence adequate to rebut [Sims's] claims. [Sims] also testified that he had petitioned the trial court to issue an order in response to a 2015 CCS entry but that the trial court had not acted in a manner indicating that the prior sentencing order was modified or invalidated. The Respondent similarly did not present any evidence which would indicate the trial court had modified the sentence in [Cause No. 112381]. In short, no document is found to exist that has modified the sentencing order subsequent to the Revised Sentencing Order dated January 8, 2009.
>
> [] Thus, between the evidence presented by Respondent and the testimony of [Sims], this Court finds that the CCS entry at issue, which the Petitioner relies on as proof of his alleged unlawful incarceration, amounts to a scrivener's error and has no impact on modifying the Petitioner's sentence, or serving as an acknowledgement of completion of Petitioner's sentence.

*Id.* at 31-32.

[7]    On July 25, 2019, Sims filed his Verified Petition for Summary Hearings on Verified Petition for Writ of Habeas Corpus in the cause from which this appeal

---

[2] Specifically, the CCS contains entries dated August 21, 2018, that indicate that Sims was sentenced to one year under Count III, 180 days under Count IV, three years under Count V, which was to run consecutive to Count I, and one year under Count VI.

arises, alleging that he was being held by an "expired commitment order," that the "original 'Justice Information System for Indianapolis/Marion County Case Chronology' . . . proves case status: Disposed," and that the "CCS . . . links him to the Disposed Case." Appellant's Appendix Volume II at 30-31. **(28)** He alleged that, in July 2019, he requested "Indiana State Prison Classification Supervisor/Records (ISP) Coordinator D. Bodlivich" to issue a "certificate of Final Discharge (State Form #49) See Ex. ( ) Request for Interview (State Form #36935)."[3] *Id.* at 29. It also alleged that, as of July 10, 2019, the Indiana State Prison refused to issue "five (5) official certificate of Final Discharge (State Form #49)" for "expired sentences" related to carjacking, intimidation, criminal recklessness, and two counts of resisting law enforcement.[4] *Id.*

[8] On August 14, 2019, the State filed its response to Sims's petition, which sought summary disposition and included a declaration signed by Jennifer Farmer, the Director of Sentence Computation/Release Unit at the DOC. The declaration states in part:

> 3. I am aware that offender [Sims] ([DOC] #120616) has filed a Verified Petition, for Discharge/Writ of Habeas Corpus seeking

---

[3] The Appellee's Appendix contains a document labeled "Ex (A)" and file-stamped "Received By Classification ISP July 05, 2019." Appellee's Appendix Volume II at 34. On the bottom half of the document, a box titled "Indiana Department of Correction Request for Interview" is labeled in the corner, "State Form 36935." *Id.* Within the box, a handwritten "Reason for Request" states "Seeking Certificate of Final Discharge . . . for Sentence 1 Carjacking . . . . My discharge was issue [sic] for Sentence 1 (Carjacking)." *Id.* Below a line demarcating "DO NOT WRITE BELOW THIS LINE," but above a signature by "Bodlovich [indecipherable]," a handwritten "Action" states "The SF49 is not on file in your packet. I have enclosed a printout of the sentence detail showing you were discharged from this sentence." *Id.*

[4] Although numbered differently, the sentences listed appear to correspond to Counts I and III-VI.

discharge because he is allegedly being unlawfully detained on an "expired commitment."

4. Sims is currently serving a three-year sentence for Class D felony resisting law enforcement. Sims's current earliest project[ed] release date from [DOC] is August 31, 2020. Sims is not eligible for discharge from his confinement at Indiana State Prison at this time.

5. On October 12, 2007, Sims was sentenced in Cause No. 49GO5-0706-FB-112381 . . . . At the time he was sentenced, Sims received 117 days of jail time credit towards his sentence, and his estimated projected release date was calculated to be December 16, 2017.

6. Sims was discharged from his sentence for Count III on December 16, 2007; from his sentence for Count IV on September 14, 2007; from his sentence for Count VI on December 16, 2007, and from his sentence for Count I on August 31, 2017. Sims began serving his three-year sentence for Count V on September 1, 2017. Due to his misconduct, Sims has lost earned credit time for Count V as follows:

> a. 04/12/2018: 30 days of earned credit time
>
> b. 04/12/2018: 30 days of earned credit time
>
> c. 04/12/2018: 60 days of earned credit time and he was demoted to Credit Class II
>
> d. 04/12/2018: 100 days of earned credit time and he was demoted to Credit Class III
>
> e. 07/11/2018: he was promoted to Credit Class II
>
> f. 10/09/2018: he was promoted to Credit Class I
>
> g. 05/01/2019: 90 days of earned credit time and he was demoted to Credit Class II

h. 05/22/2019: 173 days of earned credit time and he was demoted to Credit Class III

i. 05/22/2019: 180 days of earned credit time

While Sims is in Credit Class III, he will not earn earned credit time. Sims is now ineligible to request to have his deprived time restored due to receiving several misconduct reports for battery.

7. Accordingly, Sims is not eligible for discharge from his confinement at Indiana State Prison at this time.

Appellant's Appendix Volume II at 21-23 (internal citations omitted). That same day, the court issued an order which found that Sims was currently serving a three-year sentence, granted the State's motion, and denied his petition for writ of habeas corpus.

## *Discussion*

Before addressing Sims's argument, we observe that although he is proceeding *pro se*, such litigants are held to the same standards as trained attorneys and are afforded no inherent leniency simply by virtue of being self-represented. *See Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014). "In order to properly preserve an issue on appeal, a party must, at a minimum, 'show that it gave the trial court a bona fide opportunity to pass upon the merits of the claim before seeking an opinion on appeal.'" *Cavens v. Zaberdac*, 849 N.E.2d 526, 533 (Ind. 2006) (quoting *Endres v. Ind. State Police*, 809 N.E.2d 320, 322 (Ind. 2004)).

Indiana Code § 34-25.5-1-1 provides that "[e]very person whose liberty is restrained, under any pretense whatever, may prosecute a writ of habeas corpus

to inquire into the cause of the restraint, and shall be delivered from the restraint if the restraint is illegal." "The purpose of the writ of habeas corpus is to bring the person in custody before the court for inquiry into the cause of restraint." *Partlow v. Superintendent, Miami Corr. Facility*, 756 N.E.2d 978, 980 (Ind. Ct. App. 2001), *superseded by statute on other grounds*. "One is entitled to habeas corpus only if he is entitled to his immediate release from unlawful custody." *Id.* (quoting *Hawkins v. Jenkins*, 268 Ind. 137, 139, 374 N.E.2d 496, 498 (1978)). We review the trial court's habeas decision for an abuse of discretion. *Hardley v. State*, 893 N.E.2d 740, 742 (Ind. Ct. App. 2008). Without reweighing the evidence, this Court considers only that evidence most favorable to the judgment and reasonable inferences drawn therefrom. *Id.*

[11] Sims argues that the "CCS Report of the New Aug 21st, 2018 Commitment and the[] old 2007 CCS report . . . shows all matters disposed" and claims that, upon a "proper init[i]al intake hearing of the[] new August 21, 2018 sentence" and "change of commitment from the[] void 2007 sentence," he was entitled to "1096 days of [DOC] credit time and immediate discharge." Appellant's Brief at 14, 19. The State responds that, in context, "disposed" means that the case is closed and not that it is void or that the revised sentencing order is no longer in effect; that the revised sentencing order did not change the length of his total sentence; and that the updated sentencing entries in Cause No. 112381 simply show that he was sentenced for Counts I, III, IV, V and VI, which he was still required to serve. Appellee's Brief at 11. **(12)**

[12]     The record reveals Sims was sentenced to eighteen years on Count I, one year on Count III, 180 days on Count IV, and one year on Count VI. He was also sentenced to three years on Count V, to be served consecutively to Count I. He was discharged from his sentence for Count IV on September 14, 2007, from his sentences for Counts III and VI on December 16, 2007, and from his sentence for Count I on August 31, 2017. He began serving his three-year sentence for Count V on September 1, 2017. Farmer's declaration indicated that, as calculated, Sims's current earliest projected release date was August 31, 2020, and stated that he was ineligible at that time for discharge from confinement. We conclude that the court did not abuse its discretion in finding that Sims was currently serving his three-year sentence under Cause No. 112381 and denying his petition.

[13]     To the extent Sims asserts conspiracy, fraud, and damages claims, he did not raise these issues before the trial court and thus waived his arguments. *See Cavens*, 849 N.E.2d at 533. Waiver notwithstanding, Sims does not demonstrate that Farmer's declaration is inaccurate and his assertion asks us to reweigh the evidence, which we will not do.

[14]     For the foregoing reasons, we affirm.

[15]     Affirmed.

Baker, J., and Riley, J., concur.