HARRY E. CARPENTER, JR. *v.* STATE OF INDIANA

[No. 1277S825. Filed December 20, 1978.]

*Michael J. McDaniel*, of New Albany, for appellant.

*Theodore L. Sendak*, Attorney General, *Alembert W. Brayton*, Deputy Attorney General, for appellee.

PRENTICE, J.— In a trial by jury, the defendant (appellant) was convicted and sentenced accordingly on the following charges:  life imprisonment for kidnapping, Ind. Code § 35-1-55-1 (Burns 1975); thirty (30) years imprisonment for commission of a felony while armed, to-wit:  rape, Ind. Code § 35-12-1-1 (Burns 1975); and not less than two (2) years nor more than fourteen (14) for assault and battery with intent to kill, Ind. Code § 35-13-2-1 (Burns 1975). On appeal he presents the following issues for our review:

(1)   Whether the trial court erred in overruling the defendant's motion to suppress and his objection later made at trial to the admission of his pre-trial statement.

(2)   Whether the trial court erred in admitting a knife into evidence over the defendant's objection that it was a product of the aforementioned statement.

(3)   Whether the trial court erred in refusing to give, in its entirety, the defendant's tendered instruction No. 3 on the defense of insanity.

(4)   Whether the trial court erred in refusing to give the defendant's

tendered instruction No. 4 concerning the State's burden of proof with regard to a defense of insanity.

· (5) Whether the trial court erred in refusing to give the defendant's tendered instructions Nos. 7 and 8 on the definitions of "disease" and "defect."

(6) Whether the cumulative impact of the court's failure to give the above instructions was such that the defendant was denied due process of law.

(7) Whether the trial court erred in failing to instruct the jury as to the possible consequences of a verdict of not guilty by reason of insanity.

During the early evening hours of Friday, March 14, 1975, Lori Hibbs was approached by the defendant and another man as she got into her car. The defendant drew a knife, held it to her stomach, and told her to start driving. After a short time had elapsed, the defendant told her to stop the car, at which time he hit her, tied her hands behind her back and drove the car into a field. The defendant took her out of the car and proceeded to rape her repeatedly over a period of approximately forty-five minutes. He then told her to roll over onto her stomach and stabbed her twice. She was able to make her way to the car where she locked herself inside and sounded the horn and flashed the lights, in an effort to draw attention. The two men became frightened and ran. The defendant was picked up by the police later that evening in a bar. On the Monday morning following his arrest, the defendant gave a taped statement to the police in which he related in considerable detail his part in the kipnapping and rape.

\* \* \* \* \* \* \* \*

## ISSUE I

Prior to the start of the trial, the defendant filed a motion to suppress the taped statement, which he had made to the police, upon the grounds that it was not knowingly, voluntarily and freely given. His allegations were based in part upon the fact that there was a detention of approximately seventy-two hours between the time of his arrest and

his arraignment, during which time his statement was made. In addition he contends that he was not informed of the charges then pending against him and that he was coerced into giving the statement by police threats and promises.

Ind. Code § 35-5-5-2 (Burns 1975) sets out the factors to be considered by a trial judge in determining the voluntariness of a confession. It provides that he take into consideration all of the circumstances involved, including, but not limited to:

"(1)  the time elapsing between the arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment,

"(2)  whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession,

"(3)  whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him,

"(4)  whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel, and

"(5)  whether or not such defendant was without the assistance of counsel when questioned and when giving such confession."

This section further provides that none of the above factors are conclusive upon the issue.

At the hearing on the motion to suppress, the defendant testified that, although he refused to sign a written waiver form, he was orally advised of his rights. He stated that not only was he aware that he had the right to talk to an attorney, but also, that if he could not afford one, one would be appointed for him prior to any questioning. He also stated that he had a general understanding of his rights, since they were not only read to him but were also explained to him in simpler words, as was the fact that he was waiving them. The taped statement was played before the court and disclosed that the defendant had been fully advised of his rights. The tape also revealed that the defendant had been informed sometime during the time he was giving the statement, that there was a preliminary charge of assault and battery with intent to

kill filed against him and that there was a strong possibility that he would also be charged with kidnapping and rape. Several police officers who had been involved in the investigation also testified that they were not aware of any threats or promises made to coerce the defendant into giving his statement.

The last factor left to be considered in determining the admissibility of the defendant's confession is the delay involved between his arrest and arraignment. The delay apparently occurred because it was a weekend and the regular judge could not be reached by the prosecutor, who did not want to take the defendant before the judge pro tempore. Such a delay does not make a confession inadmissible as a matter of law, but, rather, is one of many factors to be considered in determining its admissibility. Ind. Code § 35-5-5-3 (Burns 1975); *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411. Thus, although the seventy-two hour period is a negative factor to be considered in this case, it must be balanced with all of the other circumstances involved. Such circumstances include the defendant's admission that he had been fully informed of his rights which he understood at the time, that he had talked to both his father and brother on Saturday and his general willingness to talk to the interrogating officer.

When reviewing a sufficiency issue, we will consider only that evidence which supports the trial court's determination where the evidence is in conflict, along with any uncontested evidence presented by the defendant. We will not disturb the trial court's ruling on the issue of voluntariness, if, from that stand-point, there is sufficient evidence to support it beyond a reasonable doubt. *Magley v. State*, (1975) 263 Ind. 618, 335 N.E.2d 811. All factors taken together indicate that the confession was voluntarily made.

## ISSUE II

Inasmuch as we have determined that defendant's extrajudicial confession was voluntarily given following an informed waiver, this issue is without basis.

## ISSUE III

The defendant raises several issues with regard to the trial court's

refusal to give certain of his tendered instructions. The first concerns his tendered instruction No. 3 which was given in part by the court. The omitted portion, which the defendant contends should also have been given stated:

"Furthermore, you are instructed under the law of this state a person may have sufficient mental capacity to know right from wrong and to be able to comprehend the nature and consequences of the act or acts, and yet not be criminally responsible for his actions; for an irresistible impulse of a person accused is a lawful excuse for the commission of an act, otherwise a crime, where the person committing it, though he is capable of knowing right from wrong, lacks in consequence of a diseased mind or defect, the will power to resist an impulse to commit crime."

The foregoing verbage is from an instruction which we approved, over appellant's contention of error, in *McFarland v. State*, (1975) 263 Ind. 657, 336 N.E.2d 824. We there said: "It is difficult to find error in such thoroughness." This, however, does not imply that the refusal of such instruction is error, if the subject matter is otherwise adequately covered. In this case, the following instruction was given:

"A person is not responsible for criminal conduct if at the time of such conduct, as a result of a mental disease or defect, he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. The terms 'mental disease or defect' do not include an abnormality manifested merely by repeated criminal or otherwise anti-social conduct."

This is the language approved in *Hill v. State*, (1969) 252 Ind. 601, 614, 251 N.E.2d 429. It includes an irresistible impulse, and by its broadness was more favorable to the defendant than was that which was refused.

### ISSUE IV

Defendant's tendered instruction No. 4 was as follows and was refused:

"I instruct you that when an accused files a plea that he was of unsound mind and there has been some evidence on this, the State has the burden of proving:

"(1)  That the accused could know and comprehend the nature

and consequences of his act. The nature of the act embraces knowledge on his part that the act was wrong, for if the accused be unable to distinguish right from wrong he would not know the nature of his act.

"(2) That the accused had sufficient will power to control his impulse to commit the act charged.

"If the State fails to prove either requirement beyond a reasonable doubt then there has been a failure of proof on this issue and your verdict should then be not guilty."

The instruction embodies a statement from *Flowers v. State*, (1956) 236 Ind. 151, 163, 139 N.E.2d 185, but it was not there approved as an instruction, nor have we been cited to any case wherein it has been approved as such. Unquestionably the State had the burden of proving the defendant's sanity, as well as the commission by him of the criminal acts. However, as an instruction, we believe that it might well have been misleading. It purports to embody the requisite of insanity, as a defense, and yet it does not do so with completeness. Given the negative aspect of the State's burden in this respect, care must be exercised to avoid making that burden even greater than the law intends. As tendered, the instruction fails to take into account the specific requirements of mental disease or defect prescribed by the *Hill* test. *Hill v. State*, (1969) 252 Ind. 601, 251 N.E.2d 429. Neither does it provide for the requirement of *Young v. State*, (1972) 258 Ind. 246, 280 N.E.2d 595, that the evidence of insanity be competent. As a matter of fact, as worded, the instruction would cast the burden upon the State upon the introduction of evidence of sanity as well as evidence of insanity. The statement from *Flowers, supra*, was not there intended as an instruction and is not articulative as such.

We observe that the jury was adequately instructed generally upon the State's burden of proof and, as previously set forth, it was informed as to the requisites of the *Hill* test. It was also advised in another instruction to yield to the defendant the benefit of reasonable doubt upon the issue of the defendant's soundness of mind. We are confident that the jury was not misguided in this regard and was aware of the principle embodied in the tendered instruction.

## ISSUES V & VI

Defendant's tendered instructions 8 and 9, erroneously referred to in his brief as 7 and 8, were as follows:

### "DEFENDANT'S INSTRUCTION NO. 8

"We use 'disease' in the sense of a condition which is considered capable of either improving or deteriorating."

### "DEFENDANT'S INSTRUCTION NO. 9

"We use 'defect' in the sense of a condition which is not capable of either improving or deteriorating and which may be either congenital, or the residual effect of a physical or mental disease."

Defendant argues that these instructions were tendered to supplement that portion of his tendered instruction No. 3, which was given and advised that a defendant must be found not guilty if, at the time he committed the unlawful act he was laboring under such a lack of reason, from a *diseased mind or defect,* as not to know the nature and quality of his act or that if he did, he did not know that it was wrong.

We see no error in the refusal of these instructions or harm to the defendant, in view of the giving of the following instruction. "Under the law of this State, the definition of a mental disease or defect includes *any abnormal condition of the mind* which substantially affects mental or emotional processes and substantially impairs behavior controls." (Emphasis ours). Defendant's tendered instructions could only have restricted or qualified the broader definition of this instruction, and we do not see how he could have been harmed.

Defendant further asserts that the refusal to give these instructions, his tendered instruction No. 4 hereinbefore set forth and the excluded portion of his tendered instruction No. 3 combined to deny him his defense of "irresistible impulse." We have found no error in the refusal of any of such instructions, and he has neither cited authority nor given any cogent argument to support his argument of "collective impact." We believe his position to be without merit.

## ISSUE VII

Defendant's contention is that during jury voir dire examination a

prospective juror asked a question of the court to which the judge should have responded but did not. It is not clear whether the defendant posits that the question should have been answered at that time or whether the court should have later responded by way of an instruction. We can not go to the merits of this issue, however, as the transcript does not contain a record of the voir dire proceedings, hence there is nothing before us to substantiate the claim. Error alleged but not disclosed by the record is not a proper subject for review. *Cooper v. State*, (1972) 259 Ind. 107, 112, 284 N.E.2d 799; *Bobbitt v. State*, (1977) 266 Ind. 164, 361 N.E.2d 1193.

We find no reversible error. The judgment of the trial court is affirmed.

Givan, C.J. and Hunter and Pivarnik, JJ. concur.

DeBruler, J. concurs in result.

NOTE—Reported at 383 N.E.2d 815.