Alvin CARLISLE, Appellant,

v.

STATE of Indiana, Appellee.

No. 482S156.

Supreme Court of Indiana.

Jan. 18, 1983.

Andrew R. Tanzillo, Hammond, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged with Robbery. He was tried before a jury and found guilty. He was sentenced to a twenty (20) year term of imprisonment.

Appellant was accused, along with two others, of the robbery of three residents of a home in Gary. At his trial he was not identified by any of the three victims. He was convicted substantially on the basis of his confession.

Appellant made a Motion to Suppress this confession prior to trial. After a hearing the motion was denied. Appellant properly preserved his allegation of error by objecting to the admission of the confession at trial.

Testimony at the hearing on the Motion to Suppress was as follows. Appellant testified he was arrested and taken to the Gary police station at about 11:00 a.m. on February 16, 1981. He said he was not informed of his Miranda rights at that time, nor was he told of the reason for his arrest, though he asked why he was arrested. He testified he was eventually asked a few "miscellaneous" questions and then taken to a jail cell upstairs where he spent the next hour or two. He testified he was then taken back downstairs to an interrogation room.

Appellant testified that after being taken into this room he was extensively interrogated by three police officers who were eventually identified as Sergeants Maton and Beckham and Detective Harris. He testified these three threatened him with prosecution for an unsolved murder and that one of the officers said he was going to try to get appellant the electric chair for his participation in that crime. Appellant claimed when he asked to see a lawyer he was not provided one and the questioning continued. At that point he was orally advised of his *Miranda* rights but continued to refuse to answer questions. He finally began to answer questions when one of the officers took his shoes and allegedly stated the shoes could be matched to a footprint found at the scene of the unsolved murder alluded to earlier. After answering some questions, which one of the officers purportedly recorded on a sheet of paper, another officer, Detective Bradley, came into the room. Bradley gave him a written *Miranda* warning form with a waiver provision. Appellant stated he signed the waiver and initialed the various statements of *Miranda* rights but that he did not read the form nor understand it. He made a statement regarding his role in the instant offense by responding to questions propounded to him by Detective Bradley. This was the statement admitted into evidence at his trial.

Detective Bradley testified he interrogated appellant on February 16 after Sergeant Maton called him and told him appellant wanted to make a statement. He went to the interrogation room and read appellant his *Miranda* rights from a waiver form and asked him if he understood those rights, to which appellant replied that he did. He then left appellant alone in the room for about two minutes and told him to spend the time reading over the form. When he reentered the room he received assurance from appellant that he understood his rights and made the statement in which his role in the instant offense was admitted. Appellant never asked to speak to an attorney. Bradley also testified he was unaware of any prior interrogation session conducted with appellant by any other officers. However, on cross-examination we was asked if he knew what happened between 11:00 [time of the arrest] and 3:00 [time Bradley first came in contact with appellant]. Bradley answered that Detective Harris and Sergeant Maton evidently questioned appellant.

Detective Harris testified he arrested appellant on the morning of February 16. He immediately read appellant a statement of his *Miranda* rights and that appellant said he understood those rights. He helped see appellant through the routine processing procedures at the jail and did not see him again after that process was completed. He testified he was not aware that appellant ever asked to see a lawyer.

Sergeant Beckham testified he was told by Detective Harris that appellant had been arrested when Harris brought him to the police station. He wanted to talk to appellant regarding the instant offense, but upon being informed by appellant he was a juvenile he ceased the questioning and allowed him to try to call his mother on the telephone. He then allowed appellant to eat lunch. He called Detective Bradley so the latter could conduct an interrogation. From the time appellant ate lunch until the time Bradley began his interrogation he had no contact with appellant. He verified Detective Bradley's testimony regarding the *Miranda* warning and waiver of rights

form signed by appellant. He also testified appellant never asked to see a lawyer while he was in his presence.

The testimony of all three officers established appellant was a suspect in several burglaries and robberies and that a warrant had been issued for his arrest. He was also suspected of having some knowledge about the unsolved murder. Sergeant Beckham and Detective Harris were investigating the burglaries and robberies. Detective Bradley was investigating the murder. Hence the interest of these three officers in appellant is explained.

Appellant now argues the denial of his Motion to Suppress and the admission into evidence of the statement given to Detective Bradley was reversible error. He cites the case of *Westover v. United States,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, in support of his argument. In that case, which was one of the cases consolidated for decision by the United States Supreme Court in the landmark case of *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Court held inadmissible a confession extracted by FBI agents after they properly warned the accused of his right to remain silent, that any statement could be used against him, and of his right to an attorney. This interrogation had been preceded by a fourteen hour interrogation conducted by state police officers without any such warnings having been given.

In *Hendricks v. State,* (1978) 267 Ind. 496, 499–500, 371 N.E.2d 1312, 1314, we recognized a prior involuntary statement renders a second or subsequent confession inadmissible unless there is "a break in the chain of events sufficient to insulate the statement from that which went before." We also noted in such a case the fact a second confession was preceded by a proper *Miranda* warning might still not purge the confession of its taint due to the improprieties surrounding the extraction of the first statement. *Id. See also, Brown v. Illinois,* (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416.

In the case at bar appellant contends the second confession was so tainted by the involuntary statement he made immediately prior to the interrogation by Detective Bradley that it was inadmissible. He contends the first statement was involuntary because it was the product of threats, coercion, and intimidation. *See, e.g., Smith v. State,* (1982) Ind., 432 N.E.2d 1363. Appellant argues his statement was involuntary because the questioning process continued after he had asked to see an attorney. He also argues the second confession was made in such close proximity in time and place to the first, that the second was not sufficiently insulated to purge it of the taint attached by the involuntariness of the first confession, even though the second was preceded by a *Miranda* warning. *See, Clewis v. Texas,* (1967) 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423; *Westover, supra; Holleman v. State,* (1980) Ind., 400 N.E.2d 123.

It is the State's position that by the standard of review used by this Court there is no basis for appellant's claim of error, as the evidence most favorable to the State shows no such confession was ever made. It is apparent from a review of the testimony of the police officers that this was the key factual issue in the hearing.

■ We find the State's position to be correct. In determining the correctness of the trial court's ruling on the voluntariness of a confession, we consider only the evidence which supports the trial court's ruling along with uncontested evidence presented by the defendant. *Bumgardner v. State,* (1981) Ind., 422 N.E.2d 1244; *Shepler v. State,* (1980) Ind., 412 N.E.2d 62; *Carpenter v. State,* (1978) Ind., 383 N.E.2d 815.

We believe the State presented such evidence. All three police officers testified there was no prior interrogation of appellant by officers other than Sergeant Beckham who talked to appellant until he found appellant was a juvenile. Detective Harris testified he gave appellant a *Miranda* warning at the scene of his arrest. Detective Bradley and Sergeant Beckham testified the former read appellant a statement of his *Miranda* rights prior to questioning him, that appellant said he understood those rights he was waiving by signing the waiver form, and that appellant never asked to see a lawyer.

Appellant contends the testimony of the officers is inherently unbelievable because of inconsistencies therein. He points out Sergeant Beckham testified he contacted Detective Bradley about taking a statement from appellant while Detective Bradley testified it was Sergeant Maton who called him into the station to do so. We find the record does reflect such conflict, but we think this hardly qualifies as sufficient to render the testimony of all the officers unbelievable. Appellant also asserts there was a contradiction in the evidence in that Sergeant Beckham testified he was present when Detective Bradley read appellant his *Miranda* rights, while Detective Bradley testified Sergeant Beckham came into the room while he was taking the statement. Again we do not view such a conflict relating to minor details as to the precise timing of events surrounding the taking of the confession as sufficient to render the testimony of the officers unbelievable.

■ Appellant also points out in the statement he made to Detective Bradley he was asked, "The shoes we took from you where did you buy them?" He claims this statement corroborates his story about the prior interrogation, as he testified one of the coercive techniques used by the officers was to take his shoes and allege they could be matched to a footprint at the scene of the unsolved murder. However, the testimony of the officers and the nature of the questions asked by Detective Bradley show the police were interested in locating the perpetrator of the murder, who was suspected to be known to appellant and some of his friends. It does not necessarily follow that all of appellant's other allegations about the prior interrogation are true. The fact more than one inference is possible from all the evidence introduced and that the trial judge made the inference unfavorable to appellant regarding this issue is no reason for us to reverse the trial court's finding as to the nonexistence of the prior interrogation session.

■ The evidence most favorable to the trial court's ruling on the voluntariness of the confession is substantial evidence of probative value. *Bumgardner, supra; Shepler, supra; Carpenter, supra.* We hold the trial court did not err in denying appellant's Motion to Suppress his confession and in admitting the confession into evidence at trial.

The trial court is affirmed.

All Justices concur.