John Lee HORNADAY, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee.

No. 49A02–9301–PC–2.

Court of Appeals of Indiana,
Second District.

Aug. 22, 1994.

Rehearing Denied Oct. 5, 1994.

Transfer Denied Nov. 30, 1994.

Susan K. Carpenter, Public Defender, John A. England, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

John Lee Hornaday appeals the denial of his petition for post-conviction relief from his conviction of robbery, a Class B felony.[1] The basis of Hornaday's appeal is that the Marion Superior Court lacked jurisdiction to try the case. This seemingly simple contention presents many issues for our review which we state as:

I. Whether the 70-day time limit prescribed by Ind.Crim.R. 4(B) runs anew from the filing of a new charge where the State has dismissed and refiled charges against a defendant;

II. whether the 70-day period prescribed by Ind.Crim.R. 4(B) began anew from the date of Hornaday's request for continuance and renewed motion for a speedy trial;

III. whether the running of the 70-day period prescribed by Crim.R. 4(B) is suspended between the State's dismissal and refiling of new charges where the defendant continues to be imprisoned after dismissal;

IV. whether Hornaday waived his right to a speedy trial;

V. whether the trial court properly denied Hornaday's motion for dismissal;

VI. whether a violation of Crim.R. 4(B) divests a trial court of jurisdiction on a refiled charge;

VII. whether Hornaday was deprived of his constitutional right to a speedy trial;

VIII. whether the deprivation of a defendant's constitutional right to a speedy trial divests a trial court of jurisdiction on a refiled charge?

Hornaday allegedly committed the instant crime while on Regulated Community Assignment[2] (RCA) from the Department of Correction (DOC) in whose custody he was serving a prison sentence upon a prior robbery conviction. Hornaday was arrested on December 7, 1986 and was formally charged in Marion Superior Court, Criminal Division One, on December 9 with two counts of attempted murder, a Class A felony, robbery, a Class A felony, and criminal recklessness, a Class D felony.[3] Upon Hornaday's request for a speedy trial, trial was set for January 7, 1987, within the 70-day speedy-trial period prescribed by Crim.R. 4(B).

Ten days after his arrest, the DOC conducted a parole revocation hearing at which Hornaday's parole and credit time on the prior conviction were revoked as a result of the charges against him.

On December 30, 1986, Hornaday requested a continuance from the January 7 date while renewing his request for a speedy trial. Accordingly, trial was set for February 2, 1987. On that date, the court, over defendant's objection, granted the State's motion to dismiss the charges.

Subsequently, in September of 1987, almost eight months after his arrest, the State secured a grand-jury indictment against Hornaday filed in Marion Superior Court, Criminal Division One, charging him with robbery, a Class A felony, stemming from the same occurrence. Trial on this new charge was set for November 9, 1987. Hornaday moved to dismiss the renewed charge on November 4, 1987 alleging that it was time-barred by Crim.R. 4(B). The trial court denied the motion.

On November 12, 1987, three days into the trial, Hornaday requested permission to

---

1. I.C. 35–42–5–1 (Burns Code Ed.1985).

2. Regulated Community Assignment entitles a defendant to be released five months prior to his regularly-scheduled parole date, and is therefore a form of parole.

3. I.C. 35–42–1–1 (Burns Code Ed.1985) and 35–41–5–1 (Burns Code Ed.Supp.); I.C. 35–42–5–1 (Burns Code.Ed.); I.C. 35–42–2–2 (Burns Code Ed.Supp.).

withdraw his plea of not guilty; on December 9, 1987, the court accepted Hornaday's guilty plea to robbery as a Class B felony.

Hornaday remained incarcerated from December 17, 1986, the date of his parole revocation, to and including his guilty plea on December 9, 1987. Because of the pending charges, Hornaday was incarcerated beyond his regularly-scheduled parole date of March 26, 1987, on the prior conviction.[4]

## COMPUTATION OF 70–DAY SPEEDY TRIAL PERIOD

### I. *Dismissal and Refiling*

■ Hornaday argues that where defendant has made a speedy-trial motion, the 70–day time limit does not start anew when the State dismisses and refiles the charge.[5] We agree.

There is a conflict among the decisions from various districts of this Court upon this issue.[6]

In *Fink v. State* (1984) 4th Dist.Ind.App., 469 N.E.2d 466, Fink was incarcerated upon a charge of burglary. Fink moved for a speedy trial. On the date set for trial, and before the 70–day limit had expired, the State simultaneously dismissed and refiled the charges. Because of the simultaneous dismissal and refiling, Fink was never released from jail. Fink made a new speedy-trial motion on the renewed charges. The State argued that once the original charges had been dismissed and refiled, a new 70–day period began to run from Fink's second speedy-trial motion. Our Fourth District disagreed, holding that "an incarcerated defendant's invocation of the speedy trial rule may not be defeated by the simultaneous dismissal and refiling of related charges ... Otherwise, if the state may at any time within the year prescribed by C.R. 4(C) abrogate the defendant's speedy trial motion simply by dismissing and refiling identical or related charges, we fail to discern the value of C.R. 4(B)." *Id.* at 468–69

The State cites *Shields v. State* (1983) 1st Dist.Ind.App., 456 N.E.2d 1033 in support of its argument that after dismissal and refiling, a new 70–day period starts but only if defendant files a new speedy trial motion. In *Shields*, the court held that when the State dismissed and refiled charges, "a whole new action began" and that the 70–day period would begin to run anew should Shields move for a speedy trial on the new charges. *Id.* at

---

**4.** *Time Line of Events*

| | |
|---|---|
| 12/07/86 | Hornaday arrested |
| 12/09/86 | Charges filed |
| 12/10/86 | Hornaday requests a speedy trial |
| | Trial scheduled for 01/07/87 |
| 12/30/86 | Hornaday requests a continuance and renews his request for a speedy trial |
| | Trial scheduled for 02/02/87 |
| 02/02/87 | Charges are dismissed 42 days before 03/16/87 |
| 02/18/87 | 70 days from original speedy trial request |
| 3/16/87 | 96 days from original speedy trial request (70 days extended by 26 days of delay occasioned by Hornaday's motion for continuance) |
| 03/26/87 | Regularly scheduled parole date on prior conviction |
| 09/24/87 | New charges filed |
| 10/28/87 | Hornaday requests speedy trial on re-filed charges |
| | Trial scheduled for 11/09/87 |
| 11/04/87 | Hornaday files motion to dismiss re-filed charges based on speedy-trial violation |
| 11/05/87 | 42 days from refiling of charges |
| 11/12/87 | Hornaday pleads guilty |

**5.** For purposes of Crim.R. 4, the State may not defeat a defendant's right to a speedy trial by

refiling a related charge "growing out of the same transaction, incident, events, or set of facts ..." *State v. Tharp* (1980) 1st Dist.Ind.App., 406 N.E.2d 1242, 1246. Both parties to this appeal treat the refiled charge as the same. We also do so.

**6.** States that have reached a definitive position on the issue have also taken different stances. "No clear-cut pattern is discernible in state law regarding trial on a charge once dismissed ..." 2 Wayne R. LaFave & Jerad H. Isreal, *Criminal Procedure*, § 183(C), p. 416, (1984).

The Maryland Court of Appeals defines three different approaches taken by the various states. *Curley v. State* (1984) App., 299 Md. 449, 474 A.2d 502. Under the first approach, the speedy-trial period continues to run when the new charges are filed against the defendant.

Under the second approach, the 70–day period starts at the filing of the first charge, is suspended while the charge remains dismissed, and begins to run again when new charges are filed.

Under the third approach, the 70–day period begins running anew with the filing of new charges unless the prosecution's action clearly operates to circumvent the defendant's right to a speedy trial.

1037. Under *Shields*, the State could dismiss charges against a defendant on the 69th day of the speedy-trial period, release him, and then rearrest him the following day on re-filed charges. *Shields* would allow the State to hold a defendant for several 70–day periods, neatly circumventing the statute.[7] In fact, our Supreme Court recognized this danger with regard to the six-month limitation of Crim.R. 4. The Court stated that the rule should not be interpreted to "enable the state to hold a prisoner just short of six months, release him and then on re-arresting the same man on the identical charge hold him for another period of time just short of the six months." *Majors v. State* (1969) 252 Ind. 672, 251 N.E.2d 571, 573.

This court expressed its preference for *Fink* 's reasoning in *Phelps v. State* (1989) 2d Dist.Ind.App., 532 N.E.2d 619, in which the State dismissed and refiled charges against Phelps before the 70–day period had expired. We held that Phelps' speedy-trial motion related back to the original charge because the statute states that "each and every day after the filing of such motion for early trial shall be counted" in computing the 70–day period. *Id.* at 620, *quoting* Crim.R. 4(B)(2). Seventy days from Phelps' arrest was July 1, 1986. Even though the State dismissed and refiled the charges and Phelps renewed his speedy-trial motion, the State still had only until July 1, 1986 to bring Phelps to trial. In disagreeing with the result reached in *Shields* we note that the author of *Shields* concurred in *Phelps*. We reiterate our position as stated in *Phelps*.

The United States Supreme Court has held that the federal Speedy Trial Act, upon which our rule is patterned, "is designed to minimize the possibility of lengthy incarceration prior to trial...." *United States v. MacDonald* (1982) 456 U.S. 1, 7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696. The purpose of our speedy-trial rule is best served if the 70–day period begins to run from the filing of the first charge and does not start anew on a defendant's speedy-trial motion on the refiled charge.

■ Our holding today comports with our own Supreme Court's position regarding Crim.R. 4(C) and 4(A). In several cases, our Supreme Court has stated that the one year period of Crim.R. 4(C) does not start anew with the refiling of dismissed charges. *Young v. State* (1988) Ind., 521 N.E.2d 671, 673; *Burdine v. State* (1987) Ind., 515 N.E.2d 1085, 1090; *Bentley v. State* (1984) Ind., 462 N.E.2d 58. "When identical charges are refiled, they are regarded as if no dismissal occurred, or as if the subsequent charges were filed on the date of the first charges." *Young* at 673. "[T]he dismissal and refiling of the same charge does not toll the one-year period within which a defendant must be brought to trial...." *Burdine* at 1090. "[W]hen an identical charge is refiled, it must be regarded as if there had been no dismissal of the first affidavit, or as if the second affidavit were filed on the same date as the first." *Bentley* at 59. *See also Majors, supra.*

## II. *Continuance*

■ Hornaday moved for a speedy trial on December 10, 1986 and trial was scheduled for January 7, 1987. Hornaday moved for a continuance on December 30 while renewing his speedy-trial request. As a result, trial was rescheduled for February 2, 1987, twenty-six days after the vacated date. Hornaday argues that the speedy-trial period began running anew from December 31, the day after his renewed motion. Accordingly, the 70–day period would expire on March 10, 1987. Hornaday has miscalculated because the speedy-trial period does not start anew when a defendant renews his speedy-trial motion. *Young v. State, supra,* 521 N.E.2d at 673. Under Crim.R. 4, a defendant is charged with any delay caused by his actions. *Id.* Where a defendant seeks a continuance, he is charged with the time between the vacated trial date and the rescheduled trial

---

**7.** *Shields* and *Fink* cannot be distinguished on the basis that Fink was never released when the original charges were dismissed. Assuming arguendo that Shields was released from jail when the State dismissed the first charges against him, he must have been rearrested on the refiled charges because only a defendant who is imprisoned on a pending charge may make a Crim.R. 4(B) motion.

date. *Id.* Delays chargeable to a defendant "act only to extend the time limitation by the amount of the delays...." *Back v. Starke Circuit Court* (1979) 271 Ind. 82, 390 N.E.2d 643, 644. Accordingly, the 70–day period began to run with Hornaday's original motion, was extended 26 days due to his delay, and was due to expire on March 16, 1987. *See* n. 4, *supra.*

### III. *Tolling*

■ Under Crim.R. 4(C), the speedy-trial clock is stopped during the period between dismissal and refiling. *Young* at 673; *Bentley* at 60.[8] Accordingly, the clock begins running where it left off when new charges are filed. *Id.* This district recently reiterated these holdings in *Wilson v. State* (1993) 2d Dist.Ind.App., 606 N.E.2d 1314, and we now apply it to Crim.R. 4(B). The State dismissed the charges here on February 2, 1987, with forty-two days left on the speedy-trial clock.

Ordinarily, the forty-two days would be tolled between the dismissal and the refiling, giving the State forty-two days from the filing of the new charges, or until November 5, 1987, to bring Hornaday to trial.

■ However, Hornaday argues that the court should recognize an exception to the tolling rule because he was not released when the charges against him were dismissed since neither his RCA parole nor his regularly-scheduled parole on the prior conviction were reinstated. The State counters that once the first charges were dismissed, Hornaday was no longer "held in jail on an indictment or an affidavit," as required by the statute, and was no longer entitled to protection under Crim.R. 4(B). This argument is without merit because even a defendant incarcerated upon a prior conviction may invoke Crim.R. 4(B). *Gill v. State* (1977) 267 Ind. 160, 368 N.E.2d 1159; *State v. Laslie* (1978) 1st Dist., 178 Ind.App. 107, 381 N.E.2d .529.[9]

We find no authority in this state for .an exception to the tolling rule and do not find reason to create one. Although Hornaday remained incarcerated after charges against him were filed, he was serving a sentence upon a prior conviction. Richard Curry, district supervisor of DOC, did tell Hornaday that sanctions against him would be modified if it were determined that the State would not refile charges, but at no time did he state

8. In *Bentley,* the Court expressly limited *Back, supra,* to the extent that it prohibited tolling between dismissal and refiling of a charge under Crim.R. 4(C). The Court held that if no tolling were allowed, it would place an "undue burden" on the State. *Id.* at 60. By implication, the Court also limited *Johnson v. State* (1969) 252 Ind. 79, 246 N.E.2d 181 which also prohibited tolling.

9. In *Gill,* the defendant was incarcerated on a prior conviction when he made a Crim.R. 4(B) motion for speedy trial on a new charge. The trial court held that because Gill was serving an unrelated sentence he was not being "held in jail" on the pending charge as required to invoke Crim.R. 4(B). The Supreme Court overturned the conviction stating, "The fact that incarceration during such post-arraignment period may also be required by an order in another case does not render Criminal Rule 4 inapplicable." *Id.,* 368 N.E.2d at 1161.

Although *Cooley v. State* (1977) 3d Dist., 172 Ind.App. 199, 360 N.E.2d 29, holds to the contrary with respect to a defendant held in another jurisdiction, we necessarily defer to our Supreme Court.

*Wade v. State,* a 1979 Indiana Supreme Court case, is not inconsistent with *Gill.* 270 Ind. 549, 387 N.E.2d 1309, *post-conviction relief denied,* 572 N.E.2d 498. In *Wade,* the charges were filed against the defendant on July 8, 1976, but he was not arrested on the charge until October 1977. During the time between the filing and the arrest, Wade was in prison on a prior conviction. Wade moved for discharge based on Crim.R. 4(C), arguing that the State had not brought him to trial within one year of the charge. The Court held that Wade's incarceration "had no relationship to the charges in the present information. [Wade] was 'held on recognizance' for this specific information only from October 1977, through May, 1978." *Id.,* 387 N.E.2d at 1310. At first glance, this appears to be the same argument that the Supreme Court disapproved in *Gill:* that a defendant serving time for a prior conviction is not " 'held in jail' on the pending ... charge...." *Gill,* 368 N.E.2d at 1161. However, Crim.R. 4(C) states that the year begins to run when the charge is filed *or* when the defendant is arrested on the charge, *whichever is later,* (emphasis added). Crim.R. 4(C) specifically prohibits time served under a prior conviction prior to arrest on a pending charge from being counted towards the one year period. In contrast, Crim.R. 4(B) states that the 70–day period begins running when a defendant moves for a speedy trial.

that Hornaday's parole would be reinstated. Even had no charges ever been filed against Hornaday, the DOC could have revoked his parole if it were found by a preponderance of the evidence that he had violated the terms of his parole.[10] Because Hornaday's parole would undoubtedly have been revoked even if the charges had not been refiled, there is no urgency presented by this case such that tolling the running of the statute works an injustice. The fact that the State dropped the charges against Hornaday does not affect the Parole Board's finding. It cannot be argued that but for the charges filed against him, or but for the State's assurances of refiling, Hornaday would have been released. The time between the dismissal and refiling was correctly tolled.

### WAIVER

#### IV. *Failure to Object*

■ Although the court only had until November 5, 1987,[11] to bring Hornaday to trial on October 28, the court scheduled the trial for November 9, 1987, four days outside of the speedy-trial deadline. However, by failing to object to the untimely trial date, Hornaday abandoned his request for an early trial. *Wright v. State* (1992) Ind., 593 N.E.2d 1192, 1195, *cert. denied,* — U.S. ——, 113 S.Ct. 605, 121 L.Ed.2d 540; *Jacobs v. State* (1983) 2d Dist.Ind.App., 454 N.E.2d 894.

### DISMISSAL

#### V. *Premature Motion*

■ Hornaday's motion for dismissal of the charges was properly denied. Although Hornaday moved for a dismissal, it was premature because the motion was made on November 4, 1987, a day before the speedy-

trial period was due to expire. *See Spall v. State* (1973) 1st Dist., 156 Ind.App. 189, 295 N.E.2d 852. Where a defendant moves for a discharge on the 69th day of the 70-day period, the motion should be overruled since the trial could still commence sometime on the 70th day.

### JURISDICTION

Hornaday presents this appeal as consisting of one issue: because the speedy-trial date had come and gone, the trial court lacked jurisdiction to try his case and accept his guilty plea. Because we held that Hornaday abandoned his claim to a speedy trial, we are not required to address this issue. However, because Hornaday and the State address themselves almost exclusively to this line of argument, we believe it necessary to dispose of this claim.

#### VI. *Criminal Rule 4*

■ Hornaday argues that a violation of Crim.R. 4(B) deprives the court of jurisdiction to try a defendant on refiled charges. The only guidance provided by prior decisions is the maxim that where a defendant is discharged based on the State's failure to comply with Crim.R. 4, the discharge is a bar to subsequent prosecutions. *State v. Soucie* (1955) 234 Ind. 98, 123 N.E.2d 888; *Hickman v. State* (1989) 2d Dist.Ind.App., 537 N.E.2d 64, 67.

Although not expressly addressing this issue, recent Indiana Supreme Court cases necessitate a finding that a violation of Crim.R. 4 does not deprive a trial court of jurisdiction. In *Gosnell v. State* (1982) Ind., 439 N.E.2d 1153 and *Lawson v. State* (1986) Ind., 498 N.E.2d 1212, the defendants were brought to trial after the speedy-trial period had expired. Both defendants pled guilty

---

10. The burden of proof in probation-revocation hearings is by preponderance of the evidence. I.C. 35–38–2–3(e) (Burns Code Ed.Supp.1993). No burden of proof is set out for parole-revocation hearings. I.C. 11–13–3–10. (Burns Code Ed.1992) However, while there are "distinguishing factors between probation and parole ... [there is] no indication that revocation of parole should be more difficult or procedurally different than the revocation of probation." *Richardson v. Markley* (1965) C.A.7 Ind., 339 F.2d 967, 969–70, *cert. denied,* 382 U.S. 851, 86 S.Ct. 100, 15 L.Ed.2d 90 (discussing the federal

standards of 18 U.S.C.A. §§ 4163–4210). "[O]nce the [Parole] Board has fulfilled [the statutory procedural] requirements, it has almost absolute discretion in making its decision...." *Hawkins v. Jenkins* (1978) 268 Ind. 137, 374 N.E.2d 496, 500.

11. This date reflects the 70-day period increased by a 26-day delay attributable to Hornaday's Motion for Continuance and by the forty-two days during which the time was tolled.

after the time-barred suit had been filed. The Court discussed the merits of these cases without addressing whether the trial court had jurisdiction to hear the guilty plea in the first place. It is the duty of an appellate court to raise jurisdictional defects *sua sponte. Carpenter v. State* (1977) 266 Ind. 98, 360 N.E.2d 839, *appeal after remand,* 270 Ind. 96, 383 N.E.2d 815. An appellate court has no jurisdiction over an appeal if the lower court was without jurisdiction. *Bd. of Comm'rs of Marion County v. Jewett* (1915) 184 Ind. 63, 67, 110 N.E. 553. The conclusion apparent from these decisions is that the expiration of the speedy-trial period does not in and of itself divest the trial court of jurisdiction. *See also Wright v. State* (1986) Ind., 496 N.E.2d 60. Even had Hornaday's Crim.R. 4(B) right been violated, the violation did not, under Indiana common law, deprive the court of jurisdiction.

### VII. *Constitutional Violation*

Although a violation of Crim.R. 4 alone does not deprive a court of jurisdiction, a violation of a defendant's constitutional right may preclude the exercise of jurisdiction.

The State correctly argues that a defendant waives any constitutional infirmities by pleading guilty to the offense. *Blackledge v. Perry* (1974) 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 *modified in part,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604; *Ford v. State* (1985) Ind., 479 N.E.2d 1307. However, the United States Supreme Court has carved out an exception to this rule: a guilty plea does not preclude the raising of constitutional objections. *Blackledge,* 417 U.S. at 30, 94 S.Ct. at 2103–04; *Menna v. New York* (1975) 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195. Therefore, if "the nature of the underlying constitutional infirmity ... is the right not to be haled into court at all ..." the violation is not waived by a guilty plea. *Blackledge,* 417 U.S. at 30, 94 S.Ct. at 2104.

*Blackledge* requires this court to undertake a two-pronged inquiry: 1) whether the deprivation of a defendant's constitutional right to a speedy trial adversely affects the State's right to continue prosecution; and 2) whether Hornaday was deprived of his constitutional right to a speedy trial.

Under *Blackledge* and *Menna,* not all constitutional violations prevent a court from exercising jurisdiction over a defendant. It was noted that the practical result of the constitutional right "is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." *Blackledge,* 417 U.S. at 31, 94 S.Ct. at 2104.

We hold that the federal Sixth Amendment right to a speedy trial assures that the right to trial not be unduly delayed. In *Menna,* the defendant was found in contempt of court for failure to answer questions put to him by a grand jury and sentenced to thirty days in prison. After he had served the prison term, Menna was indicted for his refusal to answer the questions and pled guilty. The Court held that the guilty plea did not waive Menna's objection based on the Fifth Amendment's protection against double jeopardy because the objection went to the very power of the court to bring Menna into court.

The Court has also held that depriving a defendant of the Sixth Amendment right to counsel deprives the court of the authority to convict the defendant. *Johnson v. Zerbst* (1938) 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461; *Blackledge.* Accordingly, a guilty plea in such a case may, and should be, set aside.

The speedy-trial guarantee is not on the same level as those guarantees discussed above. The speedy-trial right guarantees how a court will try a case, not whether it will try a case. Any particular time frame enacted with an eye toward implementing the right to speedy trial does not attain a level of absolutism so as to preclude a court from exercising jurisdiction if the time constraints are not perfectly honored. An objection based upon the fact that an indictment was issued by an unconstitutionally selected grand jury is not fatal to a guilty plea conviction. *Tollett v. Henderson* (1973) 411 U.S. 258, 266, 93 S.Ct. 1602, 1607–08, 36 L.Ed.2d 235. The speedy-trial time con-

straints are more in line with this procedural-type right.

Indiana's constitution contains its own guarantee of a speedy trial. Const. art. I, § 12. Our Supreme Court has made the more sweeping statement that when a defendant is denied his constitutional rights by a trial court, that court loses "jurisdiction." *State ex rel. Rose v. Hoffman* (1949) 227 Ind. 256, 261, 85 N.E.2d 486. This holding has been modified by more recent cases, among them *Ford v. State* (1985) Ind., 479 N.E.2d 1307, which held that a guilty plea waives specific constitutional objections.

Because a court without authority to act cannot entertain a guilty plea, these two seemingly inconsistent statements must be reconciled by holding, as the United States Supreme Court has done, that only certain types of constitutional violations deprive a court of the authority to exercise its jurisdiction. Our Supreme Court has held that depriving a defendant of the constitutional right to a jury trial in a criminal case deprives the court of jurisdiction. *Hoffman; Gillespie v. Gilmore* (1974) 159 Ind.App. 449, 307 N.E.2d 480.

It is commonly held that once a court obtains jurisdiction it retains jurisdiction until a final disposition of the case is made. *Chapin v. Hulse* (1992) 5th Dist.Ind.App., 599 N.E.2d 217. Here it could be argued that when the State dismissed the charges in Marion Criminal Division One, the case was finally disposed of. However, the State refiled the charges in Marion Criminal Division Three, pursuant to indictment. Until such time as a challenge was made to the validity of the charges or to the authority of the court to proceed, the trial court had jurisdiction of the proceedings. It is perhaps more accurate to say, in the context of this case, not that the trial court lacked jurisdiction but rather that certain determinations, yet to be made, would preclude the exercise of that jurisdiction.

■ We hold that the speedy-trial right under the Indiana Constitution is a procedural requirement and not one which precludes the exercise of jurisdiction. Although a discharge for failure to comply with Crim.R. 4 is a final judgment in the cause, it is not an acquittal in the sense of determining the defendant's guilt or innocence. *Soucie,* 234 Ind. at 103, 123 N.E.2d 888. "[T]he mere fact that appellant was re-indicted on identical charges at a later date does not of itself constitute double jeopardy." *Majors, supra,* 251 N.E.2d at 574. A violation of a defendant's right to a speedy trial is not fundamental error. *Locke v. State* (1984) Ind., 461 N.E.2d 1090; *Randall v. State* (1983) Ind., 455 N.E.2d 916. Because our Court did not address the trial court's lack of jurisdiction in *Gosnell, Lawson,* or *Wright,* as it would be required to do, *sua sponte,* if the deficiency were truly jurisdictional, we hold that a violation of the time constraints which implement a defendant's constitutional right to a speedy trial do not deprive a court of the power to enter a guilty plea conviction.

■ Therefore, it is not necessary to decide whether Hornaday's constitutional right to a speedy trial has been violated. We do find it necessary, however, to lay to rest Hornaday's vociferous contentions that a violation of Crim.R. 4(B) is a *per se* constitutional violation. The State and Hornaday both cite numerous authority for the proposition that Crim.R. 4 is and is not a constitutional right. The confusion on this issue is understandable because this state's appellate districts have been less than consistent in their holdings. Although at one time our Supreme Court held that any violation of the statute was a *per se* violation of a defendant's constitutional rights,[12] that holding has been modified by subsequent decisions.

"Although [the defendant] was not brought to trial [within the time prescribed by statute] this lapse of time alone is not sufficient to warrant a discharge under Criminal Rule 4.... 'The six months limitation has been prescribed by this Court as a reasonable time. It is in no sense a constitutional guaranty and is subject to reasonable exceptions, limitations and modifica-

---

12. "[T]he standard imposed on Indiana courts and prosecutors is stricter than that imposed in the federal system since any delay exceeding the specified time limit is considered a *per se* denial of the 'speedy trial' right." *Fossey v. State* (1970) 254 Ind. 173, 258 N.E.2d 616, 619.

tions, as we shall determine necessary to carry out its constitutional purpose.'" *Bryant v. State* (1973) 261 Ind. 172, 301 N.E.2d 179, 180, *quoting Easton v. State* (1972) 258 Ind. 204, 280 N.E.2d 307, 308. *Of Accord, Loyd v. State* (1980) 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.[13]

### VIII. *The Guilty Plea*

 Because the court had authority to accept Hornaday's guilty plea, any possible speedy-trial violation was rendered moot.

In *Gosnell, supra,* our Court held, "The right to have a trial expeditiously cannot exist or be enforced apart from the right to trial, and any claim of a denial thereof is waived upon a plea of guilty." *Id.* at 1155. In *Lawson,* the defendant objected to the speedy-trial violation before pleading guilty. The court held that Lawson had the choice of pursuing his speedy-trial challenge or disposing of the case on its merits. *Id.* at 1214. In choosing the latter, Lawson waived his speedy-trial objection. *Id.* The Court held in *Wright,* "Appellant, by pleading guilty, waived any right to have a trial, and thereby, any right to a speedy trial." *Id.* at 61.

Once the speedy-trial period had passed, Hornaday had a right to seek dismissal of the charges. Assuming Hornaday had made a proper motion for dismissal which was erroneously denied, he may have pursued his appeal based upon the denial of discharge. By pleading guilty, he waived this error. *Lawson* at 1214.

The judgment is affirmed.

KIRSCH and RILEY, JJ., concur.

---

**13.** The first and third districts cannot seem to come to a definitive conclusion on the issue.

Some cases from these districts have recognized that Crim.R. 4 does not confer a constitutional right. *Shields v. State* (1983) 1st Dist.Ind. App., 456 N.E.2d 1033, 1036; *Cooley v. State* (1977) 3d Dist., 172 Ind.App. 199, 360 N.E.2d 29; *Collins v. State* (1975) 3d Dist., 163 Ind.App. 72, 321 N.E.2d 868, 871.

Other cases have not: *State v. Laslie* (1978) 1st Dist., 178 Ind.App. 107, 381 N.E.2d 529, 531; *State v. Moles* (1975) 3d Dist., 166 Ind.App. 632, 337 N.E.2d 543, 552.