**Tommy D. ALVEY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A01–0804–CR–164.**

Court of Appeals of Indiana.

Dec. 8, 2008.

Transfer Granted Feb. 19, 2009.

Michael C. Keating, Yvette M. Laplante, Keating & Laplante, LLP,· Evansville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

NAJAM, Judge.

**STATEMENT OF THE CASE**

Tommy D. Alvey appeals from the trial court's order denying his pretrial motion to suppress following a "conditional guilty plea" in which Alvey and the State agreed that Alvey had reserved his right to appeal the court's order. Alvey raises three issues for our review.[1] However, we address only the following dispositive issue: whether Alvey may challenge the court's

---

1. Alvey does not challenge his sentence.

denial of his motion to suppress now that he has pleaded guilty.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 5, 2006, Vanderburgh County Deputy Sheriff Douglas F. Daza and Evansville Police Officer John Evans were investigating Alvey at his residence. Alvey's home is located on a four-and-one-half-acre parcel in rural Vanderburgh County. Officer Evans watched Alvey leave his residence and walked along Alvey's property line. While doing so, Officer Evans smelled what he believed to be anhydrous ammonia. However, Officer Evans could not determine the location of the source of that smell.

Later that evening, while Alvey was on his way back from dinner with Diane Elpers and a young child, Vanderburgh County Deputy Sheriff David Eads stopped Alvey's vehicle for speeding and driving left of center. Deputy Eads stopped Alvey a short distance from Alvey's driveway. A search of Alvey revealed that he was in possession of a handgun without a license, but Deputy Eads did not find any contraband after searching the vehicle. Deputy Daza then arrived and began talking to Elpers, who had methamphetamine in her purse. Elpers told Deputy Daza that Alvey had given her the methamphetamine, that "foils [were] all over [Alvey's] house,"[2] and that there was "a crock pot that had a foul smelling liquid in it" in Alvey's kitchen. Transcript at 32.

Subsequently, Deputy Daza sought a search warrant for Alvey's residence. In relevant part, Deputy Daza's affidavit stated as follows:

Within the past several weeks, the Evansville Vanderburgh Drug Task Force has been receiving information from concerned citizens who have phoned in to tell investigators that frequent short[-]term traffic has been coming in and out of [Alvey's residence]. Frequent, short-term visits by individuals to a location are frequently indications that narcotics are being traded. On today's date, I conducted surveillance on the residence. This evening, I observed a black SUV leave the location driven by a white male and carrying a female and a child. I followed it to the Silver Bell restaurant where it pulled in. While it was in the Silver Bell Restaurant, EPD Officer John Evans walked through the farm fields surrounding [Alvey's property.] He detected the odor of anhydrous ammonia but was unable to detect where the odor originated. Anhydrous ammonia is a necessary ingredient for the production of methamphetamine.

Sgt. Dave Eads observed the black SUV leave the Silver Bell.... He pulled the SUV over; Tommy Alvey was driving. A record check revealed an entry that Alvey was known to have weapons.... Eads asked Alvey if he was armed. At first Alvey said no; then he said he had his grandfather's gun in his pocket. A pat-down of Alvey revealed that he had a handgun. Eads could find no record of a permit, and Alvey could not produce one. Alvey was arrested for carrying a handgun without a permit.

EPD officer Dan Hoehn arrived and got a female by the name of Diana L. Elpers out of the vehicle. She had some methamphetamine. I questioned Elpers about the methamphetamine after advis-

---

**2.** At the subsequent motion to suppress hearing, Elpers stated that she did not remember telling Deputy Daza about the foils. *See* Transcript at 10–11.

ing her of her Miranda rights, and her waiving the same. She stated that she knew [Alvey] to smoke methamphetamine[.] She stated further that she had been in the house just prior to the Silver Bell. There were "foils" all over the house. Your affiant recognizes this as a method of smoking or inhaling the vapors of heated methamphetamine. She also stated there was a crock-pot on the stove that contained a liquid that emitted a strong chemical odor. Your affiant recognized this as a step in methamphetamine production. Alvey stated she believed this crock pot to be part of a methamphetamine cook.

Stipulated Exh. 1 at 3–4. The officers obtained the warrant and executed it, discovering controlled substances, methamphetamine manufacturing equipment, and paraphernalia in Alvey's home.

On April 10, 2006, the State charged Alvey as follows: dealing in methamphetamine, as a Class A felony; dealing in methamphetamine, as a Class B felony; possession of methamphetamine, as a Class C felony; and carrying a handgun without a license, as a Class A misdemeanor. On May 14, 2007, Alvey filed a pretrial motion to suppress the State's evidence. The trial court held a hearing on that motion on June 25 and July 10. On August 3, 2007, the trial court denied Alvey's motion to suppress. Alvey did not seek an interlocutory appeal of that decision.

On November 28, Alvey entered into a plea agreement with the State. In that agreement, Alvey agreed to plead guilty to dealing in methamphetamine, as a Class B felony, and carrying a handgun without a license, as a Class A misdemeanor. In exchange, the State agreed to dismiss the remaining charges. Alvey agreed to leave sentencing open to the trial court's discretion. However, he expressly "reserve[d] the right to appeal the Court's ruling [o]n

the motion to suppress, and the State does not object." Appellant's App. at 173. Alvey then acknowledged that "the entry of my guilty plea pursuant to this agreement . . . constitutes an admission of the truth of all facts alleged in the Information . . . to which I plead guilty. . . ." *Id.* at 175.

On January 30, 2008, the trial court held a hearing on Alvey's guilty plea. At that hearing, the court expressly informed Alvey that he was permitted to appeal the court's decision on his pretrial motion to suppress despite his admission of guilt. *See id.* at 5. The court then accepted Alvey's plea agreement and entered its judgment of conviction against him on the Class B felony and Class A misdemeanor charges. The court sentenced Alvey to serve an aggregate term of eight years, with four years suspended. This appeal ensued.

## DISCUSSION AND DECISION

Alvey appeals from the trial court's denial of his pretrial motion to suppress after he pleaded guilty to the underlying charges against him. On the threshold issue of whether such an appeal is permitted in Indiana, Alvey correctly notes a split among different panels of this court. On at least five occasions, this court has held that "[w]hen a defendant pleads guilty he or she cannot question pre-trial orders after a guilty plea is entered." *Cornelious v. State,* 846 N.E.2d 354, 357 (Ind.Ct.App. 2006), *trans. denied; see also Starr v. State,* 874 N.E.2d 1036, 1037 (Ind.Ct.App. 2007) ("After pleading guilty, a defendant cannot challenge pre-trial orders."), *trans. denied; Branham v. State,* 813 N.E.2d 809, 812 (Ind.Ct.App.2004) ("A defendant cannot question pre-trial orders after a guilty plea is entered."); *Lineberry v. State,* 747 N.E.2d 1151, 1155 (Ind.Ct.App. 2004) ("a defendant cannot question pre-trial orders after a guilty plea is entered");

*Ford v. State,* 618 N.E.2d 36, 38–39 (Ind. Ct.App.1993) ("Ford's attempt to engage in discovery and present evidence to the post[-]conviction court concerning pre-trial rulings was foreclosed by his decision to plead guilty."), *trans. denied.* However, on at least two other occasions, we have reviewed the merits of a defendant's pre-trial motion to suppress notwithstanding the fact that the defendant had pleaded guilty. *See Jones v. State,* 866 N.E.2d 339, 342 (Ind.Ct.App.2007) (issue not raised), *trans. denied; S.A. v. State,* 654 N.E.2d 791, 794 (Ind.Ct.App.1995), *trans. denied.*

Indiana's law on guilty pleas was recently restated by our Supreme Court in a post-conviction challenge to the evidence underlying the defendant's guilty plea:

> A conviction entered pursuant to a guilty plea stands on grounds substantially different from one entered based on a determination of guilt following the presentation of evidence. The former does not rest upon any factual evidence other than a defendant's testimony establishing the factual basis for his plea. Of course, the sentence imposed following such conviction is based on sentencing facts, but the essence of the present appeal is a challenge to the conviction, not the sentence.... He thus wishes to now contest the factual accuracy of his own guilty plea. This challenge implicates the nature and purpose of a guilty plea.

In 1970, the United States Supreme Court found that the federal Constitution did not bar a court from accepting a guilty plea when the defendant maintains innocence. *North Carolina v. Alford,* 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). But *Alford* explicitly recognizes that the individual states may refuse to accept guilty pleas that accompany protestations of innocence. *Id.* at 38 n. 11, 91 S.Ct. 160. Indiana

law has long refused to accept such "Alford" pleas. Over fifty years ago, this Court held that "a plea of guilty tendered by one who in the same breath protests his innocence, or declares he does not actually know whether or not he is guilty, is no plea at all." *Harshman v. State,* 232 Ind. 618, 621, 115 N.E.2d 501, 502 (1953). "A defendant who says he did the crime and says he did not do the crime has in effect said nothing, at least nothing to warrant a judge in entering a conviction." *Carter v. State,* 739 N.E.2d 126, 128–29 (Ind. 2000). Indiana jurisprudence has insisted that a factual basis must exist for a guilty plea, and that a judge may not accept a guilty plea while a defendant claims actual innocence. *Ross v. State,* 456 N.E.2d 420, 423 (Ind.1983). This rule was designed to both increase the reliability of guilty pleas and prevent the diminishment of respect for the court system as jailing people who committed no crime. *See Trueblood v. State,* 587 N.E.2d 105, 107 (Ind.1992).

A defendant's plea of guilty is thus not merely a procedural event that forecloses the necessity of trial and triggers the imposition of sentence. It also, and more importantly, conclusively establishes the fact of guilt, a prerequisite in Indiana for the imposition of criminal punishment. The defendant here is seeking to undermine the sanctity of his own guilty plea by seeking to challenge facts that were presented to police and led to his arrest and the filing of criminal charges against him. He is not contesting any testimonial evidence at trial that resulted in a determination of guilt notwithstanding a not-guilty plea.

\* \* \*

A defendant knows at the time of his plea whether he is guilty or not to the charged crime. With a trial court's ac-

ceptance of a defendant's guilty plea, the defendant waives the right to present evidence regarding guilt or innocence. . . .

*Norris v. State*, 896 N.E.2d 1149, 1153 (Ind., 2008); *see also Lineberry*, 747 N.E.2d at 1155 ("despite a plea agreement and sentence that purported to allow Lineberry to appeal the denial of his motion to suppress evidence, neither the trial court that accepted that plea nor the post-conviction court has the power to grant Lineberry specific performance of that promise.").

While Alvey's case is procedurally distinct from *Norris*, since Alvey is raising his challenge on direct appeal rather than through the post-conviction process, the substance of the two challenges is the same. Here, as in *Norris*, the defendant seeks to have evidence supporting his convictions suppressed, even though his convictions were ultimately based only on his own admissions. *See Norris*, 896 N.E.2d at 1151. Under the well-established law recited in *Norris*, such an evidentiary challenge is not permissible.[3] Insofar as this court's opinions in *Jones* and *S.A.* suggest the contrary, we disapprove of those opinions.

We also briefly note that Alvey does not challenge on appeal whether his guilty plea was entered into knowingly and voluntarily or whether the trial court erroneously accepted a guilty plea over a claim of actual innocence. On similar facts in *Lineberry*, we considered whether the defendant's guilty plea "was involuntary because it was improperly induced by the promise that he could appeal the denial of his motion to suppress the evidence. . . ." *Lineberry*, 747 N.E.2d at 1155. Specifically, we stated, in relevant part:

However, "defendants who can show that they were coerced or misled into pleading guilty by the judge, prosecutor or defense counsel will present colorable claims for relief." [*State v. Moore*, 678 N.E.2d 1258, 1266 (Ind.1997).] To assess whether the plea was voluntary, we review the post-conviction record, including any testimony, and the direct appeal record, including the transcript of the sentencing hearing, the plea agreement, and any other exhibits. *Id.* If a prosecutor made a promise to a defendant, and that promise comprised part of the inducement or consideration for the plea agreement, then that promise must be fulfilled because the breach of such a promise would render the defendant's guilty plea involuntary. *Ryan v. State*, 479 N.E.2d 517, 519 (Ind.1985) (citing *Santobello v. New York[,]* 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971)).

\* \* \*

Lineberry's defense counsel, the prosecutor, and the trial court all led Lineberry to believe that he could appeal the denial of his motion to suppress after he pled guilty when, in fact, he would have no right to appeal that decision after pleading guilty. We did not find any evidence in the record to support a con-

---

**3.** Alvey also argues that this court's opinions in *Douglas v. State*, 878 N.E.2d 873 (Ind.Ct. App.2007), and *Hornaday v. State*, 639 N.E.2d 303 (Ind.Ct.App.1994), *trans. denied*, permit his appeal. We cannot agree. In *Douglas*, we reviewed the merits of the defendant's challenge to his conviction, even though he had pleaded guilty, because the defendant "did not contest the facts of his conduct but rather [raised only] a question of law by challenging the constitutionality of the [ex post facto] application of the sexual offender registry." 878 N.E.2d at 878. And *Hornaday* was similarly limited to a defendant's constitutional right to a speedy trial. 639 N.E.2d at 310. Alvey raises no such questions of law here, seeking instead only to have evidence supporting his convictions suppressed.

trary finding. Lineberry's plea was induced by the unfulfillable promise that he could appeal the denial of his motion to suppress, and therefore the plea was involuntary. . . .

*Id.* at 1156–58.

Again, unlike in *Lineberry,* Alvey does not challenge—and therefore the State does not address—the voluntariness of his guilty plea. *See id.* at 1155. Alvey's appellate counsel discusses and quotes from *Lineberry* in the appellant's brief, and we must conclude that the decision by Alvey's counsel not to challenge the voluntariness of Alvey's plea was a strategic decision. We will not second guess that decision. As we stated in *Branham:*

> In the present case, unlike in *Lineberry,* the Defendant did not move to withdraw his guilty plea and does not raise the issue of the voluntariness of his plea. Therefore, we do not reach the issue of whether Defendant's plea was induced by the promise that he would be able to appeal the pretrial motion, because Defendant did not ask the trial court to vacate his plea, and Defendant has not raised the issue here.

813 N.E.2d at 811. Thus, Alvey's plea forecloses his right to challenge the pretrial motion to suppress, and we must affirm the trial court's entry of judgment of conviction against Alvey.

Affirmed.

MAY, J., and ROBB, J., concur.